INTERNATIONAL SIGNAL COMPANY

*v.*

MARCONI WIRELESS TELEGRAPH COMPANY OF AMERICA.

[Decided July 8th, 1918.]

1. The word "sell" in a contract settling infringement suits—*Held*, to include a contract to sell.

2. In construing a contract the cardinal rule is to ascertain the intention of the parties.

3. If more than one construction is possible, surrounding circumstances may be considered.

4. If the intention is doubtful or obscure, the most fair and reasonable construction, imposing the least hardship on either of the contracting parties, should be adopted.

5. Where possible invalidity of patents is a recognized factor leading to a contract for the payment of royalties, there is no failure of consideration because the patents are afterwards held invalid.

6. A contract settling litigation over patents, and whereby a party acquired the right to use over one hundred patents, and was bound to pay a flat royalty on each set of apparatus sold, without any apportionment of such royalties, is not so separable as to permit a finding of failure of consideration as to two patents afterwards held invalid.

7. A suit for infringement, wherein a patent was declared invalid, was not a "proceeding *in rem*," and does not prevent the same, or a different plaintiff suing another defendant and establishing the validity of the patent on the same or different evidence.

8. In a suit for royalties, the patents cannot be held invalid because of a judgment against their validity in another suit between different parties.

On bill, &c.

*Messrs. Lindabury, Depue & Faulks (Mr. Ashmead and Mr. Stryker),* for the complainant.

*Messrs. Griggs & Harding (Mr. Griggs and Mr. Harding),* for the defendant.

LANE, V. C.

The first question to be determined is whether the word "sell," used in the eighth paragraph of the agreement under consideration, is used in its strict legal sense so that a transaction to come within it must have been accompanied with delivery or passing of title, or whether it is used in a sense which would include a contract to sell. That it may be used in either sense is settled. The cardinal rule to be applied in construing a contract is to ascertain the intention of the parties. If more than one construction of the language used is possible, the circumstances surrounding the transaction may be considered as well as the written document. If the intention is doubtful or obscure, a construction should be adopted which is most fair and reasonable and which will impose the least hardship upon either of the contracting parties. Citation of authority would be superfluous. At the time of the execution of the contract, on October 15th, 1914, complainant and the defendant's predecessor claimed each to be the owners of numerous valid patents of apparatuses and processes employed in wireless telegraphy; each claimed that certain of the patents of one infringed those of the other; that

certain of the patents were invalid. There had been considerable litigation with respect to the contentions of the respective parties. The public were injured; the licensees of one were subjected to infringement suits by the other. The chaotic condition in which the situation stood is illustrated by the fact that the circuit court of appeals for the third circuit had declared valid, in an infringement suit, two of complainant's patents (*Marconi Telefunken Wireless Tel. Co., 208 Fed. Rep. 679*), and that the same two patents in another suit, since the making of the contract, have been declared invalid by the circuit court of appeals for the second circuit.  *Kinter* v. *Atlantic Communication Co., 240 Fed. Rep. 716.*

On October 15th, 1914, a contract was entered into in which there is a recital of the then pending litigations and the following statements:

"Whereas, it is desired, in the interests of the public, that said conflicting claims of each of the parties hereto against the other should be adjusted, and the right of each party to manufacture, sell, use and lease to others to be used, the patented apparatus, so that users of wireless telegraph and wireless telephone apparatus may obtain the most efficient apparatus and will not be subjected to claims under the patents of one party by reason of the purchase, lease or use of such apparatus from the other party; and

"Whereas, the parties to this agreement are mutually desirous of settling and adjusting the controversy regarding the aforesaid patent rights which they respectively own, and of compromising the claims of the parties hereto against each other for past damages or profits arising out of any infringement of said letters patent of one party by the other, and of acquiring a license to transact its business under one or all of said patents owned by the other, as well as of protecting their said respective patent rights or the monopoly thereof."

The right is given to each party to make, sell, or cause to be sold, lease or cause to be leased, use or cause to be used, wireless telegraph and wireless telephone apparatus embodying the inventions of each and all of the patents enumerated and set forth in schedules annexed to the agreement.  By the eighth paragraph there is to be paid by each party to the other twenty per cent. of the gross selling price of each set of wireless telegraph or wireless telephone apparatus which it may, under the terms of the contract, sell, including sales to the United States government. By the fourteenth paragraph it is provided that settlements

322    CASES IN CHANCERY, 1918.

Inter. Signal Co. *v.* Marconi, &c., Co. of Amer.    *89 N. J. Eq.*

should be made at certain stated times, and that the license fees and royalties should be paid on such sets as the parties had sold, leased or otherwise disposed of under the agreement during the preceding three months, and for which it had received payment from its lessees, vendees or licensees. By the nineteenth paragraph it is provided that the term of the agreement should extend until the 13th day of April, 1926, unless previously canceled or terminated in accordance with the provisions thereof, that either party might terminate or cancel the agreement at any time after the 15th day of October, 1918, by written notice, which cancellation or termination should become effective one year after the giving of the notice. The Marconi company might at any time after October 15th, 1915, and prior to October 15th, 1918, terminate or cancel the contract by giving written notice, which cancellation or termination should become effective ninety days after giving of notice.

On March 1st, 1917, pursuant to paragraph 19, the Marconi company gave notice of cancellation or termination. The question is whether it must account for sets contracted to be sold, but not delivered, within the ninety days succeeding March 1st, 1917, and the determination of that question, as I have indicated, depends upon the meaning of the word "sell," used in the eighth paragraph. If the construction sought to be put upon the word by the defendant be adopted, it follows that, had the agreement run its natural course until April 13th, 1926, the parties would not be obliged to account for any sets contracted to be sold prior to April 13th, but not delivered until afterwards.

If the construction insisted upon by the defendant be put upon the language used in the contract, the defendant, and all users of any sets of apparatus contracted to be sold during the term of the contract, but not delivered until after its termination, would be exposed to suits for infringement.

If the complainant had, during the term of the agreement, entered into a contract of sale for an apparatus which would infringe the patents of the defendant, were it not for the agreement, and for some reason or other delivery was not to be made for four months, and within ten days after the contract was made the defendant gave a notice of cancellation, the complainant or its

customer would be subject to suit for infringement. I cannot conceive that such a result was contemplated by the parties.

In view of the avowed purpose of the agreement to terminate litigation and to protect the public, I think that such a construction ought not to be adopted unless it clearly appears from the instrument that the parties used the word "sell" in its narrow legal sense. That it was so used defendant insists is indicated by the fact that, in the sixteenth paragraph, in providing for releases by the respective parties from claims for damages for alleged past infringements, the draftsman provided that the parties might continue the use of the apparatus which had at the date of the agreement, "been delivered, or contracted to be delivered, to such vendees, lessees or customers." It is said that the distinction recognized between delivery and contract of delivery indicates that the draftsman must have had in mind the distinction between a sale and a contract of sale. In the sixteenth paragraph, however, the parties were dealing with an entirely different subject-matter. They had in mind the physical situation of the apparatus. Having used the word "deliver," it immediately occurred that, to cover articles sold and not yet delivered, it was necessary to include the phrase "contracted to be delivered." They could not use the word "sell," which might have included either, for they were dealing with lessees; and they had in mind also that apparatus may have been parted with other than by sale or lease, for they included not only "vendees and lessees," but also "customers." I can find no assistance from the sixteenth clause in construing the eighth.

By the twenty-eighth paragraph a special provision is made for the continuance of the payment of royalties or license fees upon apparatus leased prior to cancellation and termination, and it is argued that, because it was assumed necessary to include this specific clause, in order to continue liability as to leases made prior to the cancellation, it must be considered that the absence of such a clause, with respect to apparatus contracted to be sold, indicates that the parties did not intend a continuance of liability as to that. But here, again, the parties were dealing with a different subject-matter, and I can find nothing in this paragraph which assists me in defining what the parties meant by the word "sell."

By the fourteenth paragraph payment is to be made at certain intervals for apparatus for which the parties had received payments from its lessees, vendees or licensees, and it is intimated that the effect of this paragraph is that no royalty is to be paid except upon apparatus not only sold and delivered, but also paid for during the term of the agreement. Such a construction ought not to be put upon the contract unless no other construction is possible.

I think that the purpose of the thirteenth paragraph was merely to arrange a convenient method of settlement. *Singer Sewing Machine Co.* v. *Brewer,* 93 S. W. Rep. 755.

I find nothing in the written contract which requires me to hold that the word "sell" was used in the eighth paragraph in its technical sense. In common usage the word "sell" does not convey the idea that delivery has been made or title passed. It is used indiscriminately to convey the idea of a technical sale and a contract to sell. In business usage an article is said to be sold when an agreement has been made that it should be taken; and this, notwithstanding the fact that it may not at the time have been manufactured and that when offered for delivery may be rejected for non-compliance with specifications.

To hold that the word "sell" was used by the parties in its ordinary sense would, I think, lead to a result by which the manifest intentions of the parties would be accomplished, and which would be most fair and reasonable. Not only would the parties but the public as well be most adequately protected. It is conceded that at best the meaning of the contract is doubtful. Purchasers of apparatus during the period of ninety days would be uncertain, whether they could be sued for infringement or not. Those who had been advised that they might purchase without being subject to suits would find, if the construction sought by the defendant to be put upon the contract be adopted, themselves open to attack. After the expiration of the ninety days, or the termination of the contract, whoever dealt with the parties would do so with their eyes open.

It is next insisted for the defendant that because the two patents of the complainant, the only ones which the defendant says it is using, have been held invalid by the United States cir-

cuit court of appeals for the second circuit, there has been a complete failure of consideration, and they base their insistence upon a line of cases which hold that where a contract is entered into for the payment of royalties based upon the assumed validity of a patent, and the patent is afterwards declared invalid, there is no further liability under the contract. But in the case at bar, that the patents might be invalid, was a recognized factor which led to the making of the contract. The case is somewhat analogous to *Strong* v. *Carver Cotton Gin Co.* (*Supreme Court of Massachusetts*), *83 N. E. Rep. 328.*

Nor do I think that the contract is so separable as to permit a finding that there was a total failure of consideration, so far as these two patents were concerned. The defendant acquired the right to use over a hundred patents. No attempt was made to apportion the royalties. Defendant was obliged to pay a flat royalty upon each set of apparatus sold. The consideration of the contract was not merely the right to use patents but the settlement of disputes which had led to vexatious litigation.

No evidence of the invalidity of the patent was offered other than the record of the United States circuit court of appeals in the case of *Kintner* v. *Atlantic Communication Co., 240 Fed. Rep. 716.* But that proceeding was not a proceeding *in rem,* and it does not prevent the same or a different plaintiff from prosecuting a suit against another defendant and establishing the validity of the patent upon the same or different evidence. The fact that the complainant here was a party to the New York litigation is without significance.

I have examined the cases cited by defendant and fine none which lead me to conclude that this court would be justified in holding that for the purposes of this suit the two patents were invalid merely because of the judgment in the *Kintner Case.* See *Pope Manufacturing Co.* v. *Owsley, 27 Fed. Rep. 100; Consolidated Roller Mill Co.* v. *Geo. T. Smith Middlings Purifying Co., 40 Fed. Rep. 305.*

I will advise a decree that the defendant is bound to account for apparatus sold, although not delivered within the ninety-day period.