MIDDLESEX COUNTY COURT OF COMMON PLEAS.

ALBERT T. SCANNELL, PLAINTIFF, v. RANSOME CONCRETE MACHINERY COMPANY, DEFENDANT.

Decided February 1, 1933.

For the motion, *John Fuchs.*

*Contra, Walter C. Sedam.*

LYON, J.   This is a motion to strike out an answer as sham.   Affidavits in support and against have been filed.

The action is brought to recover royalties due under a license granted by the plaintiff to the defendant to manufacture and sell the device referred to in a certain patent covering a mast erecting apparatus, dated April 24th, 1928, and known by number 1,667,440.

The license was granted under an agreement dated May 20th, 1929, and grants a non-exclusive right to manufacture, use and sell the apparatus in question to the end of the term of the patent.   The royalty to be paid was at the rate of $50 per plant with a minimum sum of $3,000 per year, payable in monthly payments of $250 each.

The defendant accepted the license and operated under it until October 15th, 1931, and paid the minimum royalty as it became due, amounting in all to $7,000.   At this time the

defendant ceased paying upon the claim that the plaintiff was not entitled to further payments for the reasons hereinafter stated. Thereupon this action was brought to recover what the plaintiff claims to be due, namely, $2,500.

The complaint simply alleges the contract, annexes a copy, and claims the amount due and unpaid. The answer admits the making of the license agreement, the acceptance by the defendant, the payment on account of the royalties due of $7,000, and the refusal to pay.

The defenses set up in the answer are (1) that the contract was entered into because of representations made by the plaintiff that he was the owner of the patent in question, when he was not the owner of the broad subject-matter of the said patent; that (2) the plaintiff threatened the defendant with suit for infringement if it did not enter into the agreement, and (3) that under paragraph 11 of the license agreement—

(a) Its rights under any other invention, patent, application or claim relating to the general subject-matter should not be detrimentally affected (presumably on the ground that if any such invention, patent, application or claim was of such nature, or determined to be, as to take precedence over plaintiff's patent, so as to make plaintiff's patent worthless to them, then there would be a failure of consideration), and

(b) That defendant was entitled to concessions, reasonable royalties or other compensation from the plaintiff in case he used the inventions. Defendant also claims the return of the moneys paid under the agreement because it claims the license agreement was signd under the misrepresentation of plaintiff above mentioned.

By reason of and under the above paragraph (b) defendant claims in the proofs (although it does not appear to be clearly set forth in the counter-claim) that the plaintiff has used the invention and that defendant is, therefore, entitled to compensation therefor and sets up this claim by way of counter-claim as a part of its answer.

By the proofs it appears that one John P. Faber, on August 5th, 1924, filed an application for a patent covering the same subject-matter as covered by plaintiff's patent, which appli-

cation is still pending; that more than a year after Faber's application was filed plaintiff's application was filed for the patent in question, upon which application plaintiff's patent was granted on April 24th, 1928, as No. 1,667,440.

That an interference proceeding was instituted in the United States patent office known as No. 60,018 and such proceedings were had therein that it was decided on final hearing that the subject-matter of the claim of the patent in question was first invented and reduced to practice by Faber, and not by the plaintiff, and the decree on said hearing awarded the said subject-matter to defendant (the said Faber having assigned his claim to the defendant). An appeal from said decision has been taken and is now pending.

Faber has assigned his claim to the defendant who held the same at the time of the license agreement, May 20th, 1929. It is stated in the proofs (affidavit of Mr. Cox, paragraph 5) that the plaintiff knew at the time of the agreement that the defendant had the Faber application pending.

It appears, therefore, that at the time the agreement in question was entered into, the defendant owned the application for the Faber patent, the plaintiff owned his patent, and that there was a question as to the interference between the two. Indeed, it is claimed by the defendant that it entered into the agreement because the plaintiff said that unless it did he would bring action for infringement of his patent. In the light of these facts the agreement in question was made. When the agreement was drawn, section 11 was inserted, which, acording to the contention of defendant, is the important consideration in this case. It reads as follows:

*"Eleventh:* It is further understood and agreed that the acceptance of this license by the licensee shall not act as a waiver, modification of or detrimentally affect its rights under any inventions or patents or application for patent or claims thereof owned or controlled by it relating to the general subject-matter of the patents herein referred to and also that the said licensee shall have the right to proper concessions, reasonable royalties or other compensation from the licensor and others under said inventions, patents, applications or claims in case he or they wish to use the same."

In view of this section, together with other considerations mentioned above, defendant has set up its defenses above recited.

First, it says that plaintiff claims he was the owner of the patent when he was not. By that it means that plaintiff was not the owner of the "broad subject-matter" of the patent, meaning that the claim on his subject-matter had been awarded to defendant's assignor in the interference contest.

Plaintiff replies that he was the owner of the patent at the time of the license agreement. It cannot be disputed that he did have title to and was the owner of this patent at that time, it being recited in the agreement as being No. 1,667,440, and dated April 24th, 1928. Defendant recognized this in signing the agreement. Not only did defendant sign the agreement but accepted it and acted under it, paying royalties to plaintiff for twenty-eight months amounting in all to $7,000. It only declined to pay further after the decision in the interference contest.

The question, therefore, arises as to whether there was a misrepresentation on the part of the plaintiff so as to avoid the agreement and release defendant from payment.

Counsel for plaintiff has cited the case of *Ferry-Hallock Co.* v. *Progressive Paper Box Co.,* 76 *N. J. Eq.* 1; 73 *Atl. Rep.* 230; *affirmed (Court of Errors and Appeals),* 76 *N. J. Eq.* 338; 75 *Atl. Rep.* 1100. There is a very meager statement of facts in the opinion in the case, but it seems to lay down principles which have application to the case at bar.

At page 3 the Vice-Chancellor says: "under the circumstances proved, complainant's representation or claim that the 'stays' in question were covered by its patents, was *bona fide* and honestly made, and was a representation or claim which, in bargaining with defendants as to a license, it committed no fraud in making, and that the defendants being at that time actually claiming and acting on an adverse title—being the same title which they now set up and seek to establish by evidence—were not entitled to act on this representation or claim of title made by complainant as the assertion of a fact, the falsity of which, subsequently proved, would entitle them

to repudiate the contract on this ground. No authorities have been referred to establishing that representations of this character, made under these circumstances, are representations of fact on which defendant had then the right to rely, but might subsequently disprove, when it so elected, by disputing the license."

"The general principle is that the licensee, to the extent that he continues to use the license, is estopped from denying the licensor's title." Citing cases.

To the same effect is the case of *International Signal Co.* v. *Marconi,* 89 *N. J. Eq.* 319; 104 *Atl. Rep.* 378, where it is held that "where possible invalidty of patents is a recognized factor leading to a contract for the payment of royalties, there is no failure of consideration because the patents are afterwards held "invalid." The Vice-Chancellor (at pages 324, 325), says:

"It is next insisted for the defendant that because the two patents of the complainant, the only ones which the defendant says it is using, have been held invalid by the United States Circuit Court of Appeals for the Second Circuit, there has been a complete failure of consideration, and they base their insistence upon a line of cases which hold that where a contract is entered into for the payment of royalties based upon the assumed validity of a patent, and the patent is afterwards declared invalid, there is no further liability under the contract. But in the case at bar, that the patents might be invalid, was a recognized factor which led to the making of the contract. The case is somewhat analogous to *Strong* v. *Carver Cotlon Gin Co. (Supreme Court of Massachusetts),* 83 *N. E. Rep.* 328."

In this opinion it is stated *"that the patents might be invalid, was a recognized factor which led to the making of the contract."* In the case at bar Mr. Cox, for the defendant, says in paragraph 5 of his affidavit as follows:

"5. At the time of the execution of the said contract of May 20th, 1929, the plaintiff was informed and knew that the defendant had an application for patent relating to the general subject-matter of plaintiff's patents of 1927 and 1928

set forth in said agreement, and that the defendant intended to make claims in said application relating to said subject-matter. This information was discussed between deponent and the plaintiff at a conference held in the city of Chicago over the terms of the proposed agreement very shortly prior to the execution thereof. It was for this reason that the plaintiff at deponent's request agreed to have paragraph eleventh of the agreement included therein, which paragraph states that the acceptance of the license by the defendant 'shall not act as a waiver, modification of or detrimentally affect its rights under any inventions or patents or applications for patent or claims thereof owned or controlled by it relating to the general subject-matter of the patents.'

"At the same time it was agreed, as stated in the said paragraph, that the defendant should have 'the right to proper concessions, reasonable royalties or other compensation' from the plaintiff under said inventions, patents, applications or claims. There was no understanding or agreement that such reservation and right to compensation related to anything other than the subject-matter of the plaintiff's said patents."

Mr. Robinson, also for the defendant, says in paragraph 3 of his affidavit as follows:

"3. I was present at a conference held in Cleveland, Ohio, in January, 1929, attended by the plaintiff, Albert T. Scannell, and George C. Ellis, then president of the defendant company, during which conversation the plaintiff represented that he was the absolute owner of the three patents referred to and described in the license agreement and I heard the plaintiff state that he would be compelled to protect his patent rights against any infringement by the Ransome Company or anyone else and that he would bring legal action against the Ransome Company unless they would enter into a license agreement with him covering his said patents. I stated to the plaintiff at that time that the Ransome Concrete Machinery Company had certain patent applications pending which would offset some of the claims of his said patents and that the Ransome Company was, therefore, entitled to the same concessions he had granted to the Insley Manufacturing

Company on account of their patents relating to the same subject-matter."

It is quite clear from this testimony that there was a question of infringement between these parties as to these two patents or claims, and, in the language of the last above cited case, "that the patents might be invalid, was a recognized factor which led to the making of the contract."

In the affidavit of Mr. Cox for the defendant he states that "the said contract was given with a warranty on the part of the plaintiff." This is not the fact. There was no express warranty in the contract, nor was there any warranty implied in law.

It does not appear in this case that the defendant was in anywise evicted from any rights which it obtained under the license agreement, so as to bring the case within the principle laid down in the case of the *Macon Knitting Co.* v. *The Leicester Mills Co.,* 65 *N. J. Eq.* 138; 55 *Atl. Rep.* 401, wherein it is held that "a patentee, in granting a license to use the patented article, impliedly warrants that he possesses the title to the patent right, and that the licensee will not be evicted therefrom; *but he does not warrant the validity of the letters patent.*"

This latter case was approved in the case of *American Mechanical Improvement Co.* v. *Des Lauries Aircraft Corp.,* 119 *Atl. Rep.* 179; 94 *N. J. Eq.* 197. At page 207 the vice-chancellor says "the licensee cannot set up the invalidity of a patent, the right to use which he holds by license, unless there has been something equivalent to an eviction of the licensee."

It is clear in this case that the defendant has not·been evicted from its rights under the license agreement. There is no conflict as to these rights except between the plaintiff and defendant in the case. The plaintiff is not challenging the right of the defendant under the agreement but is rather recognizing them by an endeavor to hold the defendant to a payment of the royalties due thereunder.

It seems to me there was no misrepresentation in the making of the contract which could justify the defendant in repudiating it.

But defendant claims that in view of this question section 11 (*supra*) was inserted in the agreement, particularly the first part of it before the words "and also." Just what is the meaning of this part of the section is not very clear, either from its reading or from the affidavits filed; but it does not seem to place any restriction on the rights of the plaintiff as to his patent. It was undoubtedly intended to preserve full right to defendant under any patents or inventions it may hold. It cannot be claimed that by enforcing the agreement any of defendant's rights are taken away. If the inference is that it has the right to manufacture and sell the apparatus in question under any other claim or patent so that the plaintiff's patent is worthless to it, then the consideration unfortunately for the defendant may fail. But that is a condition for which the plaintiff is not responsible and under the questions above considered is not a defense.

The defendant has raised the further defense that it was compelled under a sort of duress to sign the contract in order to save itself from a suit by plaintiff for infringement. I cannot think there was any duress. It is a condition similar to what would occur if a person exercised a right of way over lands claimed by another without his permission, and then the alleged landowner threatened suit for trespass unless his rights were recognized by lease. It is rather the compromise of a controversy which the law favors. Certainly there was no illegal act by the plaintiff and no constraint overcoming the free will of the defendant.

But the defendant further claims to have a counter-claim against the plaintiff, and has annexed such a claim to the answer, which is included in plaintiff's motion to strike out.

It does not seem that the defendants counter-claim includes what defendant really claims in its proofs. Of course an amendment would be allowed if there is merit in the claim. It seems to claim reimbursement for a part of the moneys paid by it to plaintiff on account of the royalties due under the agreement. If the contract must be enforced which under hereinabove mentioned authorities seems to be required, then there can be no reinbursement from this money paid.

If the counter-claim is based on the latter part of section 11 of the contract, which reads "that the licensee shall have the right to proper concessions, reasonable royalties or other compensation from the licensor and others under said inventions, patents, applications or claims in case he or they wish to use the same," then defendant should have the opportunity to show any claim for such compensation.

The fourth paragraph of the affidavit of Mr. Robinson asserts that certain licensees of plaintiff have made and sold mast plants coming under the terms of plaintiff's patent, and that it is for compensation or royalties for such use that comes under the latter part of section 11, and which is contemplated by or intended to be set up in the counter-claim. Counsel may communicate with me further on the question of the counter-claim.

The other parts of the answer would have to be stricken out.