## AUTOGRAPHIC REGISTER CO. v. PHILIP HANO CO., Inc.

### No. 4632.

United States Court of Appeals First Circuit.
July 10, 1952.

Thomas J. Byrne, New York City (Clifford H. Byrnes, Boston, Mass., on brief), for appellant.

Richard F. Walker, Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a final judgment in a suit for patent infringement wherein the court below dismissed the plaintiff's complaint and also its counterclaim for an accounting and royalties, and awarded the

defendant $6,999.49, with interest at 6 per cent from June 29, 1950, and costs, on its counterclaim for certain royalties which it alleged it paid the plaintiff "under protest and without prejudice" under circumstances to be presently described.

The patents in suit are No. 2,082,730 issued to the plaintiff as assignee of C. W. Brenn on June 1, 1937, and No. 2,258,573 issued to the plaintiff as assignee of A. A. Johnson on October 7, 1941. The court below held such of the claims of both patents as were put in issue in this litigation invalid "for lack of invention." D.C., 102 F.Supp. 981, 983. Moreover all of the claims of both patents were held invalid for the same, and also for other reasons, in a suit brought by the plaintiff against another defendant in the Seventh Circuit. Autographic Register Co. v. Uarco, Inc., D.C.N.D.Ill.1949, 86 F.Supp. 730, affirmed, 7th Cir.1950, 182 F.2d 353, certiorari denied 340 U.S. 853, 71 S.Ct. 82, 95 L.Ed. 625, rehearing denied, 1951, 342 U.S. 856, 72 S.Ct. 71. We see no occasion to canvass the matter of patentable invention again. It will suffice for us to say that in spite of everything said by the appellant in its briefs and oral argument, reading the three opinions cited above leaves us with the firm conviction that the claims of the patents here in suit cover but shadows of shades of ideas "which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures", to paraphrase and quote the now classic language of Mr. Justice Bradley in Atlantic Works v. Brady, 1882, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438, and hence will not support the grant of a monopoly under the patent laws. Indeed the district court opinions cited above, and Judge Lindley's thorough opinion written for the Court of Appeals for the Seventh Circuit in the Uarco case, all so fully cover the facts, and so clearly demonstrate invalidity for lack of patentable invention, that further elaboration on our part could add nothing of any consequence to what has already been said. Therefore, except to record our amazement that 12 and 45 claims respectively should be used to cover obviously very simple alleged inventions,

indeed inventions said by the plaintiff to have outstanding merit for that reason, we leave the matter of validity where it stands and turn to the questions raised by the respective counterclaims, taking up first the one filed by the defendant.

It appears from the findings of the court below, as to which there is no real dispute, that on July 21, 1942, the plaintiff granted the defendant a non-exclusive non-transferable license to manufacture, use and sell the devices covered by the Brenn and Johnson patents in suit, and three other patents. The defendant as licensee agreed, inter alia, that during the term of the license it would not "directly or indirectly attack or question the validity" of any of the patents included in the license, and, absent the licensee's insolvency, the license was to continue in force until October 7, 1958. There was no provision for earlier termination of the license by either party. Apparently the license was lived up to by both parties without question until the patents in suit were held invalid by the United States District Court for the Northern District of Illinois in 1949 in the Uarco case cited above. The defendant was not a party or a privy in that litigation, but when it learned of the judgment therein its counsel communicated with the plaintiff for the purpose of repudiating the license agreement of 1942. Defendant's counsel talked with Mr. C. W. Brenn, the plaintiff's vice president and general manager, over the telephone and said that in view of the Uarco decision the defendant did not consider itself liable for any future royalty payments. Mr. Brenn expressed confidence that the District Court's judgment in the Uarco case would be reversed on appeal, and defendant's counsel then suggested that royalty payments accruing in the future should be paid to some third party "in part or in full in escrow" subject to refund if the District Court's judgment in the above case should be affirmed. Mr. Brenn did not accept or reject this proposal out of hand but said he would have the plaintiff's patent attorney, Mr. A. A. Johnson, who is not a member of the bar, communicate in reply. Mr. Johnson did so by telephone later that day and defendant's counsel re-

peated the substance of his earlier conversation with Mr. Brenn, and added that so far as the defendant was concerned the license agreement "stood denounced, so that defendant could be sued as an infringer." However, defendant's counsel said that he would advise his client "to offer future royalty payments on the understanding that if the plaintiff declined to agree to contingent refund, it should return the checks, whereupon the defendant would make no further payments." Moreover, counsel for the defendant stated that if the plaintiff should accept and retain royalty payments made as above, "such retention would constitute an undertaking to repay" in the event that the plaintiff was unsuccessful in its appeal from the District Court's judgment in the Uarco case. Mr. Johnson replied that if the plaintiff "was not entitled to the royalties," defendant's counsel "would have his relief whether they were paid under protest or not."

Following this conversation, in October 1949, the defendant sent the plaintiff a check bearing the legend "this payment is made under protest and without prejudice," and with the check it sent a letter reading: "In conformity with the telephone conversation had between our attorney, Mr. Maurice V. Seligson of New York, and your attorney, Mr. A. A. Johnson, enclosed herewith please find royalty check which is paid under protest and without prejudice." The check and the letter were brought to the attention of Mr. Brenn, and by him discussed with Mr. Johnson. The court below found that Mr. Brenn "was aware of the defendant's last proposal and understood that the check was submitted as an offer pursuant thereto." The plaintiff accepted and retained the proceeds of the check without communicating with the defendant. In January and again in May, 1950, the defendant, "believing that its offer had been accepted," to quote again from the findings of the court below, sent the plaintiff checks bearing the same legend, with similar covering letters, and the plaintiff again appropriated the proceeds of the checks without communicating with the defendant. The checks sent as above totaled $6,999.49 which is the amount with interest thereon which the de-

fendant seeks to recover under its counterclaim.

On May 25, 1950, (rehearing denied June 29, 1950) the Court of Appeals for the Seventh Circuit handed down its decision affirming the District Court's judgment in the Uarco case, and the defendant on the day rehearing was denied made demand on the plaintiff for repayment of the amount of the three checks. The plaintiff refused, and then the parties entered into a written agreement terminating their 1942 license as of June 28, 1950, without prejudice to the "obligations of the parties under the said license agreement which existed prior to the cancellation thereof."

On the facts outlined above the court below held that the parties in 1949, by their properly constituted agents, had orally modified their license agreement of 1942 whereby the defendant acquired the right to recover the amount of the royalties it had paid to the plaintiff "under protest and without prejudice." That court said:

"I conclude and rule that an offer was made by the defendant to the plaintiff on September 7, 1949, which was intended to effect a modification of the original license agreement. The plaintiff through Mr. Johnson did not reject this offer and the subsequent act of the plaintiff in cashing the checks and retaining the proceeds therefrom constituted an acceptance of it. The license agreement was thereby modified and the obligations of the parties thereto were correspondingly changed. The plaintiff, therefore, is obligated to the defendant in the amount of $6,999.-49 with interest from June 29, 1950, the date of the defendant's demand therefor."

The defendant rests its counterclaim upon the theory adopted by the court below, that is, upon the theory of an oral modification of a pre-existing licensing contract whereby royalties paid thereunder from and after the date of the District Court's judgment in the Uarco case would be refunded by the plaintiff in the event that that judgment should be affirmed by the Court of Appeals for the Seventh Circuit. Thus the counterclaim is a permissive

one filed under Rule 13(b), Fed.Rules Civ. Proc. 28 U.S.C. for it is one arising under the licensing contract, a transaction separate and distinct from the subject matter of the opposing party's claim for patent infringement, and a transaction which does not arise under the patent laws of the United States. Luckett v. Delpark, 1926, 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703, and cases cited. See also for further citation of cases 3 Walker, Patents, (Deller's Ed.) § 413. Hence it would seem from numerous decisions of the inferior federal courts, (the Supreme Court so far as we have been able to determine has not passed on the question, see Moore v. N. Y. Cotton Exchange, 1926, 270 U.S. 593, 609, 46 S.Ct. 367, 70 L.Ed. 750) federal jurisdiction over the counterclaim must rest upon some ground independent of jurisdiction over the original cause of action alleged by the plaintiff. See 3 Moore's Federal Practice, Second Ed., § 13.19 for statement of the rule and citation of cases.

■ We need not consider the jurisdictional problem lurking in cases like the present in greater detail, however, for here we have a clear independent ground under Title 28 U.S.C. § 1332(a) (1) for federal jurisdiction over the counterclaim for the sum in controversy is nearly $7,000 and the corporate plaintiff owes its existence to the laws of New Jersey and the corporate defendant to the laws of Massachusetts. State law is therefore applicable under the rule of Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 and we must turn to the law of the forum, Massachusetts, to determine what state's law to apply. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

■ Massachusetts, in conformity with the usual rule (see Am.Law Inst., Restatement, Conflict of Laws § 332) refers to the law of the place of contracting to determine the validity and effect of a promise in the respects with which we are here concerned, Adamowski v. Curtiss-Wright Flying Service, Inc., 1938, 300 Mass. 281, 15 N.E.2d 467 and the place of contracting

was New Jersey where the plaintiff has its principal office, for that is where the plaintiff by its silent appropriation of the defendant's checks accepted the defendant's offer, if its act amounted to acceptance, and the contract amending the 1942 license agreement came into being if any such contract ever came into being at all. Am.Law Inst., Restatement, Conflict of Laws § 327.

Two questions of New Jersey law arise. The first is whether the plaintiff's acceptance of the defendant's checks and its appropriation of the proceeds thereof without communicating with the defendant constitute an acceptance of defendant's offer to modify the pre-existing license agreement of 1942. And second, if it did, was there any valid consideration flowing from the defendant to the plaintiff to support the undertaking of the latter to refund the royalies paid "under protest and without prejudice" in the event that the District Court's judgment in the Uarco case should be affirmed on appeal?

■ There is no finding by the court below, perhaps on the evidence there could be none, that the plaintiff acting through its president and general manager by silent acceptance and appropriation of the defendant's checks intended as a matter of fact to accept the defendant's offer for modification of the license agreement. On the other hand, there is no finding of a contrary intention. However, a finding of positive intention to accept an offer is not always necessary to the creation of a contract. It is elementary that an offer may be accepted by performing or refraining from performing a specified act as well as by an affirmative answer,[1] and it is stated in Am. Law Inst., Restatement, Contracts, § 72(2) as the general rule that "Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance." See also 1 Williston, Contracts, (Rev.Ed.) §§ 91, 91D. Furthermore, silent acceptance of a check sent in payment of a disputed claim, even in the absence of a finding of mental assent, is now generally held by

---

1. Am.Law Inst., Restatement, Contracts § 29.

parity of reasoning to constitute an accord and satisfaction of the claim. See 6 id. § 1854 wherein with full citation of cases, including Decker v. George W. Smith & Co., 88 N.J.L. 630, 96 A. 915, it is said that the "great and increasing" weight of authority in the United States "as a matter of law regards the use and retention of the check by the creditor, with knowledge of the condition, as assent to it. It is said that the acceptance of the check necessarily involves an acceptance of the condition upon which it was tendered." New Jersey law appears to be in accord with the above. Columbia Rolling Mill Co. v. Beckett Foundry Co., 55 N.J.L. 391, 26 A. 888. At least we find no New Jersey cases to the contrary, so we answer the first question in the affirmative.

Thus we come to the question whether the plaintiff's implied undertaking to refund the royalties under consideration in the event of an affirmance by the Court of Appeals in the Uarco case was supported by adequate consideration. The plaintiff contends that it was not. The argument is that the defendant in paying those royalties was only performing a clear obligation imposed upon it by the licensing contract, and hence the payment will not support the plaintiff's conditional promise to refund for the reason that performance of a previously existing contractual obligation is not a sufficient consideration. 1 Williston, Contracts, (Rev.Ed.) § 130; see also 1 Am. Law Inst., Restatement, Contracts § 76(a). We do not agree for the reason that the defendant's contractual duty to pay royalties after the District Court's decision in the Uarco case was not clear but on the contrary open to honest and reasonable dispute.

In Automatic Radio Mfg. Co., Inc. v. Hazeltine Research, Inc., 1 Cir.1949, 176 F.2d 799, affirmed 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312, rehearing denied, 1950, 340 U.S. 846, 71 S.Ct. 13, 95 L.Ed. 620, this court had occasion to consider at some length the question of a non-exclusive licensee's duty to pay royalties after the patent, or some of the patents covered by the license, had been held invalid in litigation between the patentee-licensor and third parties. There is no occasion here to go over the ground again. It will be enough to say that the discussion in the above case and the texts therein cited (1 Williston, Contracts, (Rev.Ed.) § 137 and 2 Walker, Patents (Deller's Ed.) § 384) clearly indicate that the law on the matter is, in general, unsettled, and that we have been able to find no clear and unequivocal holding in New Jersey that on no theory whatever may a non-exclusive licensee be excused from further payment of royalties by a holding in other litigation that the licensed patent is invalid.[2] Thus the defendant forbore exercise of its right to litigate its duty to pay royalties following the District Court's decision in the Uarco case, and this forbearance, even though only temporary, being a detriment to it constituted sufficient consideration for the plaintiff's promise to repay the royalties in the event of an affirmance on appeal of the District Court's judgment in the Uarco case, 1 Williston, Contracts, (Rev.Ed.) § 103F.

In view of our conclusion that the court below was correct in holding that the oral agreement of 1949 modifying the licensing contract of 1942 was valid and binding, with the result that the defendant is entitled to recover on its counterclaim, there is no occasion to consider the plaintiff's counterclaim which is for an accounting and payment of royalties from the date of the District Court's judgment in the Uarco case to June 28, 1950, when the licensing contract of 1942 was terminated by mutual agreement in writing.

The judgment of the District Court is affirmed.

2. The closest New Jersey cases we have found involve licensing contracts wherein possible invalidity was a recognized factor leading to the agreement and so are clearly distinguishable. See International Signal Co. v. Marconi Wireless Telegraph Co., 1918, 89 N.J.Eq. 319, 104 A. 378, affirmed International Radio Telegraph Co. v. Marconi Wireless Telegraph Co., 90 N.J.Eq. 271, 106 A. 891; Scannell v. Ransome Concrete Machinery Co., 1933, 164 A. 592, 11 N.J.Misc. 134.