28 N.J. Super. 476 (1953)
101 A.2d 106
ANTHONY VALENTE AND ALICE VALENTE, HIS WIFE, PLAINTIFFS,
v.
ATLANTIC CITY ELECTRIC COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 24, 1953.
*477 Mr. Alfred R. Pierce for plaintiffs.
Mr. John Lloyd, Jr., for defendant (Messrs. Lloyd & Horn, attorneys).
HANEMAN, J.S.C.
Plaintiffs herein seek a mandatory and prohibitory injunction against the defendant, directing it to remove a certain electric line located upon premises situate in the Township of East Greenwich, County of Gloucester and State of New Jersey, and to desist from further construction in connection with said electric line. They seek not only said injunctive relief but as well the *478 recovery of the consideration for the erection of poles and the installation of the anchors, and damages for the destruction of trees on their lands by the defendant.
The facts in connection herewith are as follows:
On or about October 4, 1951 one Frederick C. Zimmer and T. Linwood Steward, then being the owners of the premises here involved, executed an easement agreement to the Atlantic City Electric Company, which said agreement was recorded in the clerk's office of Gloucester County on October 19, 1951. The said agreement contained the following phraseology:
"The electric transmission line shall be construed parallel to transcontinental gas pipe line."
The easement granted the right to the Atlantic City Electric Company to "construct, erect, operate and maintain a line * * * for the purpose of transmitting electric or other power * * *." Among other things, the said easement provided that the said defendant should have the "privilege * * * to cut and remove from said premises or the premises of the Grantor, adjoining the same on either side, any trees, overhanging branches or other obstructions which may endanger the safety or interfere with the use of said poles, fixtures or wires attached thereto * * *."
The consideration for the granting of said easement was the payment of the sum of $35 for each pole and $15 for each anchor erected on said lands, to be paid "whenever and as soon as any poles are erected thereon."
On January 31, 1952 the defendant paid to the said Zimmer and Steward the sum of $400 as and for the consideration for the said easement. On or about April 10, 1952 the plaintiffs entered into an agreement with the above referred to Steward for the purchase of the premises here involved. Pursuant to said agreement, deed was delivered to the plaintiffs on April 23, 1952 and recorded in the clerk's office of Gloucester County on April 24, 1952.
On or about September 15, 1952 defendant commenced the construction of the transmission line, which said construction *479 was completed on or about November 7, 1952. This transmission line, although it proceeds in a general easterly-westerly direction across the lands of the plaintiffs, and in the general vicinity of the transcontinental gas pipe line, is not, in all parts, equidistant from the said transcontinental gas pipe line.
Prior to the final execution of the agreement for the purchase of the lands here involved, plaintiffs had, on several occasions, attempted to negotiate with either Steward or Zimmer, who demanded a price of $2,800. The plaintiffs were desirous of paying some sum less than that amount. Said Steward and Zimmer testified that after the defendant had paid to them the sum of $400 they reduced their price to $2,400 and advised the plaintiffs that the reason for such reduction arose out of the payment of that amount by defendant and the delivery to it of the easement here in question.
Plaintiffs contend that the use of the word "parallel" required the defendant to construct its transmission line not only in the same direction as the transcontinental gas pipe line, but equidistant therefrom in its entire course. The defendant, on the other hand, contends that the use of the word "parallel" intended merely that the said transmission line should proceed in the same general direction as the transcontinental gas pipe line.
The word "parallel" has not received judicial construction in New Jersey. The cases in other jurisdictions apply either of the above asserted connotations, depending of course, on the apparent intent exhibited in the agreement where so employed. Webster's New International Dictionary (2nd ed.) defines "parallel" as follows:
"1. Geom. Line evenly every where in the same direction but never meeting, however far extended; in all parts equally distant; * * *.
2. With like direction or tendency; running side by side; * * *."
The cardinal rule in the construction of contracts is the ascertainment of the intent of the parties.
*480 In Bellisfield v. Holcombe, 102 N.J. Eq. 20 (Ch. 1927), the court said:
"In construing a contract, the cardinal rule is to ascertain the intention of the parties. If more than one construction is possible, surrounding circumstances may be considered; and, if the intention is doubtful or obscure, the most fair and reasonable construction, imposing the least hardship on either of the contracting parties, should be adopted. Int. Signal Co. v. Marconi, &c., Co., 89 N.J. Eq. 319; affirmed for the reasons given in the court below, 90 N.J. Eq. 271."
And again, on page 27:
"It is a primary canon of construction of contracts that all the rules are subordinate to the leading principle that the intention of the parties is to be collected from the entire instrument and must prevail, unless it is subversive of some established rule of law, and that, in the case of ambiguity, the court may resort to proof of the circumstances under which the contract was made, to aid in ascertaining such intention. United Boxboard and Paper Co. v. McEwan Bros. Co., 76 Atl. Rep. 550, 553 (N.J. Ch. 1910)."
In Casriel v. King, 2 N.J. 45 (1949), the court said, at page 50:
"The polestar of construction is the intention of the parties to the contract as disclosed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are to be regarded. Even when the contract on its face is free from ambiguity, evidence of the situation of the parties and the surrounding circumstances and conditions is admissible in aid of interpretation. The inquiry is the meaning of the words when assayed by the standard adopted by the law. On the theory that all language will bear some different meanings, evidence of the circumstances is always admissible in the construction of integrated agreements, but not for the purpose of giving effect to an intent at variance with any meaning that can be attached to the words. This is a primary rule of interpretation which has special application where the meaning of the instrument is not clearly apparent. The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing  not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been *481 said. So far as the evidence tends to show not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant. And the general design of the agreement is to be kept in view in ascertaining the sense of particular terms. Corn Exchange National Bank & Trust Co. v. Taubel, 113 N.J.L. 605 (E. & A. 1934); New York Sash & Door Co., Inc. v. National House and Farms Assn., Inc., 131 N.J.L. 466 (E. & A. 1944); Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379 (E. & A. 1947). In short, we are to consider what was written in the light of the circumstances under which it was written, and give to the language a rational meaning consistent with the expressed general purpose."
Viewing the word "parallel" in the light of the circumstances extant at the time of the execution of the contract, I conclude that it was used in the sense of requiring the defendant to construct its transmission line in the general locality and in the general direction of the transcontinental gas pipe line, and not as would be required under the Euclidean geometrical meaning of the word. The proofs sustain the conclusion that the defendant did so construct its line as required by the easement. Plaintiffs demand for an injunction is therefore denied.
I find that the plaintiffs not only had constructive notice of the existence of this easement by reason of R.S. 46:21-1, but as well had actual notice from the statement of their grantors.
There was no legal prohibition against the payment to said Steward and Zimmer of the consideration for the installation of the poles and anchors prior to the date called for in the agreement. The contract, as far as the performance by Steward and Zimmer is concerned, was executed, but as far as the defendant was concerned, was executory. The plaintiffs had no interest in the payment of the consideration. An acceleration of the payment was of concern merely to the original parties to the easement, the grant having already been made. For this reason, as well as the actual knowledge which the plaintiffs had of such payment prior to their purchase of said premises, they must fail in their attempt to now recover such consideration from the defendant.
*482 The defendant had the right, power and authority to cut and remove the trees which were here removed, under the express language of the easement, which it did not here violate.
Judgment will therefore be entered dismissing the complaint.