## DRACKETT CHEMICAL CO. v. CHAMBERLAIN CO.
### No. 6129.

Circuit Court of Appeals, Sixth Circuit.
March 13, 1933.

Walter F. Murray, of Cincinnati, Ohio (Frank L. Zugelter, of Cincinnati, Ohio, on the brief), for appellant.

Wm. H. Parmelee, of Pittsburgh, Pa. (Allen & Allen, of Cincinnati, Ohio, and Byrnes, Stebbins, Parmelee & Blenko, and George E. Stebbins, all of Pittsburgh, Pa., on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The Drackett Chemical Company, having commenced, in 1921, the manufacture of a drainpipe solvent which consisted of caustic alkali and powered aluminum, was served by the Chamberlain Company with notice of alleged infringement of its patents to Isaacs, No. 1,010,768, and to Smith, No. 1,019,377. Thereupon the two companies entered into negotiations which culminated on December 1, 1922, in a license agreement granting to the Drackett Chemical Company an exclusive right under these patents to sell to the grocery trade only. There is nothing in the record to show that all questions of royalties for past infringement were not also then settled to the entire satisfaction of both parties. Under date of August 9, 1924, the earlier license agreement was modified so as to give to the Drackett Chemical Company the nonexclusive right to sell to the hardware and drug trade. The right to sell to the grocery trade remained exclusive.

On September 9, 1925, appellant and appellee joined as plaintiffs in a suit against the B. T. Babbitt Company for infringement of the Isaacs patent by the sale of a drainpipe solvent which likewise was composed of caustic alkali and particles of aluminum. This cause came on for final hearing in May, 1928, and at the hearing the judge indicated that he did not consider that the Isaacs patent covered the Babbitt product. Thereupon the Drackett Chemical Company notified the Chamberlain Company that, while it would continue to send credit memoranda covering royalties, such royalties would be paid only if the Isaacs patent were held valid in the

pending litigation, and that, if this patent were held invalid, the Drackett Chemical Company would consider itself absolved from any further obligation to pay royalties. Under date of September 14, 1928, the United States District Court for the Southern District of New York, in which court the Babbitt action was pending, rendered its decision finding the Isaacs patent invalid in so far as it claimed "a heat generating compound composed of aluminum and dry caustic alkali" (claim 1 of the Isaacs patent). No appeal was prosecuted to this decision. The Drackett Chemical Company has never manufactured or sold any of the compounds claimed in the Smith patent.

Under these circumstances, the District Court held in the case at bar that, by continuing to mark its cans with the notation "U. S. Patent 1,010,768" (Isaacs patent), and to market its product in the cans so marked until on or about December 5, 1928, when the Isaacs patent expired, the Drackett Chemical Company was estopped to deny liability under the license agreement, or to deny that the product so marked actually embodied the invention covered by the patent. A final decree was accordingly entered covering the stipulated royalties which had accrued from April 1, 1928, through December 5, 1928. From this decree the defendant below appeals.

■ For more than fifty years it has been recognized that a plea or answer that the patent is void is not, of itself, a sufficient defense to an action for royalties under a license agreement, but that evidence of what may be called an eviction is such defense. White v. Lee, 14 F. 789 (C. C. Mass. 1882). In H. C. White Co. v. Morton E. Converse & Son Co. (C. C. A.) 20 F.(2d) 311, 313, Judge Learned Hand tersely expresses this doctrine: "It is quite true that a licensee may not dispute the validity of the patent in a suit for royalties. U. S. v. Harvey, 196 U. S. 310, 25 S. Ct. 240, 49 L. Ed. 492; Marston v. Swett, 66 N. Y. 206, 23 Am. Rep. 43; though the contrary is the case after decree of invalidity in another suit"—citing Ross v. Fuller (C. C.) 105 F. 510, infra. To the same effect, see Walker on Patents (6th Ed.) § 355; McKay v. Smith, 39 F. 556 (C. C. Mass.); Ross v. Fuller & Warren Co. (C. C.) 105 F. 510; In re Dr. Voorhees Awning Hood Co. (D. C.) 187 F. 611, 626; Universal Rim Co. v. Scott, 21 F.(2d) 346, 348 (D. C. Ohio); Macon Knitting Co. v. Leicester Mills Co., 65 N. J. Eq. 138, 149, 55 A. 401; Marston v. Swett, 82 N. Y. 526, 534.

■ We are cited to no case in the Supreme Court, and we know of none, adjudicating the precise issue here presented. In Eureka Co. v. Bailey Co., 11 Wall. 488, 491, 20 L. Ed. 209, it is held that, if the defendant was engaged in manufacturing a certain type of machine before it took a license, and the license agreement was made on due deliberation and apparently in reference to these machines, "there arises a very strong presumption that the denial that anything in those machines is covered by plaintiff's patent is made to support an unwillingness to pay the royalty which it had agreed to pay." The court expresses a doubt whether it might be shown in equity, after such deliberate agreement, that the machines manufactured did not embody the invention set forth in the patent, but, if this could be permitted, the testimony must repel the presumption which would otherwise arise. And in United States v. Harvey Steel Co., 196 U. S. 310, 25 S. Ct. 240, 49 L. Ed. 492, it is held that a defense of invalidity is not open to the defendant in a suit for royalties in the absence of an outstanding decision against the patent. See, also, Andrews v. Landers, 72 F. 666, 670 (C. C. Conn.); Barber Asphalt Paving Co. v. Headley Good Roads Co., 283 F. 236, 239 (D. C. Del.). But it seems to us that a different situation must of necessity arise where the monopoly, apparently created by the grant of a patent, has been destroyed by a decree of invalidity in a court of competent jurisdiction. The subject-matter of such a contract is essentially "the monopoly which the grant confers: the right of property which it creates" (Gayler v. Wilder, 10 How. 477, 493, 13 L. Ed. 504), and, when this monopoly has been destroyed, and the exclusive rights of manufacture, sale, and use, purported to have been created by the patent, are judicially decreed to be no longer exclusive, but are thrown open to the public at large, there has been a complete failure of consideration—an eviction—which should justify a termination of the contract. Prior to such eviction, the mere invalidity of the patent is properly held not to be a sufficient defense, because the licensee may still continue to enjoy all the benefits of a valid patent. It may be respected, and the licensee would then have just what he bargained for. McKay v. Smith, supra. It is only when, by judicial decree or otherwise, it is published to the world that the monopoly is destroyed, that the licensee can claim a corresponding release from his obligation to pay royalties.

■■ It is suggested that here the license contract was more than a mere license, in

that it contained a provision that the Chamberlain Company would not advertise or solicit business from the grocery trade; and that the Drackett Chemical Company, having purchased immunity from suits for past or future infringement, by its agreement to pay royalties, should not now be permitted to deny such liability. The first of these suggestions is without weight. Licenses may be exclusive, partially exclusive, or nonexclusive. The principles which we have stated apply with equal force to all these types, and even to assignments or sales of the patent itself under which some portion of the purchase price remains due. Herzog v. Heyman, 151 N. Y. 587, 45 N. E. 1127, 56 Am. St. Rep. 646. The second suggestion fails to recognize that, so far as appears from the record, royalties were not fixed with a view to taking care of past infringements, but were prospective only. The license agreement was as duly deliberative upon the part of the Chamberlain Company as upon that of the Drackett Chemical Company. If the Isaacs patent was in fact invalid the Chamberlain Company gave up nothing by its waiver, if there was a waiver, of damages for past infringement. The saving of the expense of litigation was common to both companies, but, as we have said, it does not appear that adequate settlement for such past infringement was not made at the time.

Our conclusion is that, under the authorities above cited, there was no such mistake of fact (the validity of the patents) as would warrant a recovery of royalties already paid; that the Drackett Chemical Company is estopped to deny the validity of the patent in respect of royalties accruing prior to that which constitutes an eviction, and in respect of such royalties it is also estopped to deny that the compound manufactured by it embodied the invention set forth in claim 1 of the Isaacs patent, for this is but to contend that such claim is invalid; that the decision of the District Court for the Southern District of New York on September 14, 1928, was a practical eviction of the Drackett Chemical Company from the enjoyment of the monopolistic rights granted under the license; that the appellant is not estopped to set up such eviction, and, in view of the notice theretofore given, the obligation to pay royalties should cease as of the date of such decision; but that all royalties accruing prior to that date must be paid.

The decree of the District Court is therefore reversed, and the cause remanded, with instructions to restate the account between the parties in accordance with the principles announced in the foregoing opinion.