George H. SCHERR, Plaintiff,

v.

DIFCO LABORATORIES, INC.,
Defendant.

Civ. No. 25532.

United States District Court
E. D. Michigan, S. D.

Feb. 2, 1967.

Don K. Harness of Harness, Dickey & Pierce, Detroit, Mich., for plaintiff.

Arthur Raisch of Barnes, Kisselle, Raisch & Choate, Detroit, Mich., for defendant.

## OPINION

THORNTON, District Judge.

This action is one for specific performance of a license agreement, for an accounting and for damages. Jurisdiction rests on diversity of citizenship and presence of an amount in controversy in excess of $10,000. We append hereto a copy of said License Agreement which was entered into on July 1, 1959. Under the terms set forth therein defendant was granted a non-exclusive license under plaintiff's United States Reissue Patent No. 24557 and Canadian Patent No. 578,055, "to make, use and sell the licensed products" in Canada and the United States. (License Agreement, paragraphs 2 and 3.) A royalty payment of 3% of the net sales price is provided for in paragraph 4. Succeeding paragraphs of the agreement set forth the method of payment, accounting and conditions under which defendant may cancel the agreement. Because defendant's defense to this action is planted squarely on the language contained in paragraph 11, we set it forth here:

*Paragraph 11*

"Difco shall have the right to make, use, and sell, royalty-free, any product which has been ruled not to infringe the Scherr Reissue Patent 24,-557 by any Court of competent jurisdiction and last resort or from which no timely appeal has been taken by Scherr."

At the outset it may be well to clarify three particulars—one concerning the

genesis of this agreement, one identifying the product with which the agreement deals and one concerning the Canadian patent. Prior to the date of the agreement, July 1, 1959, there was pending before another judge of this Court litigation between these same two parties, in which plaintiff Scherr was prosecuting an action against defendant Difco for patent infringement of Scherr's United States Reissue Patent No. 24557. The License Agreement before us now was consummated in settlement of that litigation. We think that some significance attaches to this fact and we will have occasion to be more specific subsequently. Concerning the product involved herein, it is described in the agreement, at the top of page 2 thereof, as a "sensitivity testing device comprising an essentially flat, integral single piece of absorbent paper material in the form of a ring and having a plurality of peninsular areas which extend from the ring and carry substances useful in assessing the effect of various agents on the growth of microorganisms, which product is presently known by the name 'UNIDISK'." Concerning the Canadian patent, the testimony adduced during the course of the trial herein established the fact that Difco, since the inception of the agreement, has not been engaged in the manufacture, use and/or sale of the licensed product in Canada. We are, therefore, not concerned with those provisions of the agreement pertaining to a license under Canadian Patent No. 578,-055.

About the same time as the litigation involving the claim of infringement by Scherr was pending in this Court, Scherr brought another infringement action involving his United States Reissue Patent No. 24557 (the same patent which is the subject matter of the License Agreement here in suit) against National Bio-Test, Inc., a Nebraska corporation, in the United States District Court for the District of Nebraska. In relation to both the Nebraska patent infringement litigation and the Eastern District of Michigan patent infringement litigation there

was a financial arrangement in effect between Difco (defendant here) and National Bio-Test. This arrangement was known to Scherr (plaintiff here) and consisted of the following:

> "National Bio-Test, Inc. and Difco Laboratories, Incorporated have arranged to share equally the cost of defending the suits brought by plaintiff against Difco Laboratories, Incorporated and National Bio-Test, Inc. The costs of defending each suit does not include any judgment against either company for profits, damages, or other compensation for infringement of the Scherr patent. Each party has conducted its defense independently with attorneys of its own choosing, and neither company, either directly or indirectly, has exerted any control, either partial or full, of the defense made in the suit against the other on the Scherr patent."

The existence of the above-quoted financial arrangement between National Bio-Test and Difco plus the fact that Scherr was represented by the same attorney in both the Michigan and Nebraska patent infringement litigation and Difco by the same attorney in the Michigan patent infringement litigation who represented National Bio-Test in the Nebraska patent infringement litigation compel one obvious conclusion—that the parties to the License Agreement involved herein had knowledge at the time of discussing, preparing and entering into said License Agreement that the validity of the patent in suit in the Nebraska litigation (the same patent which is the subject matter of said License Agreement) was an issue for determination in that suit. The patent infringement suit against National Bio-Test was tried in February 1960 by Judge Richard E. Robinson of the United States District Court for the District of Nebraska, and on March 10, 1961 that Court handed down an opinion determining that the "patent in suit is void for want of invention." Scherr v. National Bio-Test, Inc., D.C., 197 F.Supp. 372, 378 (1961). On April 27, 1962 the Court of Appeals

for the Eighth Circuit affirmed Judge Robinson's opinion. Scherr v. National Bio-Test, Inc., 301 F.2d 901 (1962). In his opinion Judge Robinson made no finding of fact and/or determination on the issue of infringement. The affirming opinion of the Court of Appeals is also silent on the issue of infringement.

In his Amended Bill of Complaint plaintiff states that "[w]hile Defendant paid Plaintiff the minimum payments due in accordance with the terms of the aforesaid agreement, Exhibit A, on July 1, 1960 and July 1, 1961, Defendant has failed to make payments to Plaintiff as provided for in said agreement on July 1, 1962, July 1, 1963 and July 1, 1964, and Defendant has not rendered any accounting to Plaintiff or made any additional payments to Plaintiff, as provided for in said agreement. Thus Defendant has failed to perform its obligations in accordance with the terms of said agreement."

Difco's defense to the instant breach of contract action may be best stated in its own words as they appear in its brief. Difco states that when it "executed the settlement agreement with Scherr on July 1, 1959, Difco understood that it had settled its patent controversy with Scherr regardless of the outcome of the Omaha litigation," the Omaha litigation referring, of course, to the suit in Nebraska previously adverted to herein. Difco also states that:

> "It was Difco's understanding that if the outcome of the Omaha litigation was favorable to Scherr and affirmed on appeal, then Difco would be protected by its license agreement with Scherr, and if the Omaha litigation was adverse to Scherr and affirmed on appeal, then Difco, proceeding under Paragraph 11 of the agreement, would have a royalty-free license under the Scherr Reissue Patent to make the *ring* type sensitivity disk which was the subject of the agreement. The license would not cover the *star*

shaped disk shown in the Scherr patent which plaintiff Scherr was then making and selling." *

In addition to the foregoing, Difco also relies on the finding of patent invalidity as constituting an eviction and, therefore, a defense to this action. Difco contends that its position in this respect is supported by the opinion of the Court of Appeals for the Sixth Circuit in Drackett Chemical Co. v. Chamberlain Co., 6 Cir., 63 F.2d 853 (1933).

The *Drackett* case must be reckoned with. Involved there was an exclusive license agreement. The Court ruled that an eviction had occurred when the patent involved had been previously judicially declared invalid in another case tried in the United States District Court for the Southern District of New York. The *Drackett* case was tried in the United States District Court for the Southern District of Ohio. There is dicta in the opinion of the Court of Appeals for the Sixth Circuit, to which the decision of the lower court was appealed, to the effect that the doctrine of eviction is applicable to non-exclusive as well as exclusive licenses, although the license in that case was an exclusive one. The rationale in that opinion derives from the principle that a license agreement confers a monopoly, the Court there reasoning that "when this monopoly has been destroyed, and the exclusive rights of manufacture, sale, and use, purported to have been created by the patent, are judicially decreed to be no longer exclusive, but are thrown open to the public at large, there has been a complete failure of consideration—an eviction—which should justify a termination of the contract." Id., at 854. It is not quite clear to us in what manner a non-exclusive license creates a monopoly. However, it is clear to us that a patent may be declared invalid in one jurisdiction and valid in another. But for the License Agreement which was here entered into in settlement of plain-

---

* The restriction of the License Agreement to the ring type disk was in compliance with a request by Difco.

tiff's infringement suit against defendant, in this jurisdiction, plaintiff might well sue defendant for infringement in this jurisdiction and obtain a ruling of validity of his patent. In such a situation we can hardly believe that eviction would be a defense to this action. The instant case, however, is not a patent suit but one for breach of contract. We are persuaded that the doctrine of eviction may not here be honored as a defense in the light of the circumstances surrounding the execution of this particular License Agreement and in the light of the provisions contained in the agreement. We think that the background of this case, together with the language employed in the drafting of the License Agreement herein distinguishes it from *Drackett*. We do not think that *Drackett* was intended to nullify hornbook contract law.

■■ These parties were represented by competent counsel in both the Nebraska and Michigan law suits. When they agreed to settle the infringement suit pending in this Court their eyes were wide open to the Nebraska case then pending. They knew what issues were there involved. They knew of the possibility of rulings on both validity and infringement in that suit. They saw fit to incorporate paragraph 11 in the agreement giving Difco royalty-free rights as to any product ruled not to infringe the patent. Why was not language included here encompassing royalty-freedom resulting from a ruling of patent invalidity? Can we possibly say that the parties and their counsel never thought of this? It should be noted that immediately on the heels of paragraph 11 is paragraph 12 providing that "Difco shall not contest the validity of the Scherr Reissue Patent 24,557 or Canadian Patent 578,055 during the life of this agreement." "[W]hen businessmen reduce their purposes to a formal writing the burden of adding terms or of widening the obligation is heavy." Woodbury v. United States, Ct.Cl., 364 F.2d 993, 999 (1966). We read this agreement exactly as it is written. We find no

basis for interpreting or construing it in any manner requiring implications. The only royalty-free right granted to Difco attaches to "any product which has been ruled not to infringe the Scherr Reissue Patent 24,557 by any Court of competent jurisdiction and last resort or from which no timely appeal has been taken by Scherr." (License Agreement, paragraph 11.) It does not accrue to Difco by virtue of the finding of patent invalidity by the Court of Appeals for the Eighth Circuit. Whether a different result might be reached if this patent were declared invalid by a court sitting in the Sixth Circuit we are not here called upon to decide. There appears to us to be no inequity in concluding that Difco has breached its contract and that plaintiff is entitled to the damages and other relief here sought.

This opinion will constitute compliance with Rule 52 as to findings and conclusions. Plaintiff may present an appropriate order and/or judgment on notice.

## APPENDIX

### LICENSE AGREEMENT

This license agreement made as of the 1st day of July, 1959, at Detroit, Michigan, between George H. Scherr of 50 Monee Road, Park Forest, Illinois, hereinafter referred to as "Scherr", and Difco Laboratories, Incorporated, a corporation of the state of Michigan, having a place of business at 920 Henry Street, Detroit, Michigan, hereinafter referred to as "Difco";

WITNESSETH:

Whereas Scherr is the owner of United States Reissue Patent 24,557, issued October 28, 1958, entitled "Means for Assessing the Effect of Various Agents on the Growth of Microorganisms", and of Canadian Patent 578,055, issued June 23, 1959, entitled "Means for Assessing the Effect of Various Agents on the Growth of Microorganisms";

Whereas there is now pending in the United States District Court for the Eastern District of Michigan, Southern Division, Civil Action No. 17189, en-

titled George H. Scherr, plaintiff, v. Difco Laboratories, Incorporated, defendant, where Difco is charged with infringement of the aforesaid Reissue Patent and with other acts alleged to constitute a violation of Scherr's property rights in the invention described in the aforesaid Reissue Patent; and

Whereas it is the desire of the parties to dispose of the aforesaid civil action in an amicable manner and to define the rights and obligations of the parties with respect to continued manufacture, use and sale by Difco of a sensitivity testing device comprising an essentially flat, integral single piece of absorbent paper material in the form of a ring and having a plurality of peninsular areas which extend from the ring and carry substances useful in assessing the effect of various agents on the growth of microorganisms, which product is presently known by the name "UNIDISK", one sample of which is attached hereto as Exhibit A, said product being hereinafter referred to as the "licensed product";

Now, therefore, in consideration of the mutual promises and agreements contained herein, it is hereby agreed as follows:

1. Civil Action No. 17189 entitled "George H. Scherr, plaintiff, v. Difco Laboratories, Incorporated, defendant", now pending in the United States District Court for the Eastern District of Michigan, Southern Division, shall be dismissed without prejudice to plaintiff's right to reinstate the action for cause.

2. Scherr hereby grants to Difco a non-exclusive license under Canadian Patent 578,055 to make, use, and sell the licensed product in Canada. The license granted herein contains no right to sublicense.

3. Scherr hereby grants to Difco a non-exclusive license under United States Reissue Patent 24,557 to make, use, and sell the licensed product in the United States and possessions and territories of the United States. The license granted herein contains no right to sublicense.

4. Difco shall pay to Scherr an amount equal to a royalty of three percent (3%) of the net sales price received by Difco from sales of the licensed product.

5. Difco shall pay annually to Scherr for each twelve month period commencing with the date of this agreement the sum of three thousand dollars ($3000) per year which shall be debited by Difco against royalties accruing under the provisions of paragraph 4 hereof.

6. At the end of the first five years of this agreement, and at the end of each succeeding five year period or fraction thereof to the date of expiration of the United States Reissue Patent, there shall be an accounting of Difco's net sales by the certified public accountant normally employed by Difco.

7. In the event that Difco's net sales for any five year period exceeds five hundred thousand dollars ($500,000) or a pro rata portion of that amount for a fractional period, an amount representing the accrued, unpaid royalty shall be paid by Difco to Scherr within thirty (30) days of the submission of the accountant's report.

8. In the event Difco's net sales for the first five year period be less than five hundred thousand dollars ($500,000), no rebate shall be made to Difco. In the event Difco's net sales for any succeeding five year period be less than five hundred thousand dollars ($500,000) or a pro rata portion of that amount for a fractional period, an amount representing the excess royalty shall be repaid by Scherr to Difco within thirty (30) days of the submission of the accountant's report.

9. Difco shall pay the sum of three thousand dollars ($3000) to Scherr in satisfaction of past infringement of United States Reissue Patent 24,557 by reason of the manufacture, use, or sale by Difco of the licensed product upon signing of this agreement.

10. This agreement may be cancelled by Difco at any time after the first contract year upon six months' prior notice

in writing upon the occurrence of either of the following events:

(1) If Difco completely ceases to manufacture, use, or sell the licensed product;

(2) If, after Difco furnishes Scherr proof of an infringing structure, Scherr fails either to abate the infringement or bring and diligently prosecute a suit against the infringer within six months of receipt of such proof.

11. Difco shall have the right to make, use, and sell, royalty-free, *any product* which has been ruled not to infringe the Scherr Reissue Patent 24,557 by any Court of competent jurisdiction and last resort or from which no timely appeal has been taken by Scherr.

12. Difco shall not contest the validity of the Scherr Reissue Patent 24,557 or Canadian patent 578,055 during the life of this agreement.

13. Payment of all sums and amounts shall be made within thirty (30) days after the end of each agreement year.

George H. Scherr

DIFCO LABORATORIES, INCORPORATED

By H. A. Burnett—President