George H. SCHERR, Plaintiff-Appellee,

v.

DIFCO LABORATORIES, INC., Defendant-Appellant.

No. 18004.

United States Court of Appeals
Sixth Circuit.

Oct. 3, 1968.

---

Arthur Raisch, Detroit, Mich., for appellant; Barnes, Kisselle, Raisch & Choate, Detroit, Mich., on brief.

Don K. Harness, Detroit, Mich., for appellee; Robert L. Boynton, Harness, Dickey & Pierce, Detroit, Mich., on brief.

Before WEICK, Chief Judge, CELEBREZZE, Circuit Judge, and CECIL, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

This diversity action was brought to recover royalty payments allegedly due under a patent licensing agreement. Scherr, Plaintiff-Appellee, granted a nonexclusive license under United States Patent 24,557 to Difco Laboratories, Inc., Defendant-Appellant, to make, use, and sell a certain licensed product. When Difco failed to pay the royalties specified in the agreement or to account for sales of the licensed product as provided in the agreement, Scherr brought this action in the United States District Court for the Eastern District of Michigan for specific performance of the licensing agreement, for an accounting and for damages. The District Court granted the relief requested, and Difco has appealed. We vacate the judgment of the District Court and remand the cause for clarification and further findings.

Scherr contends that, under the license agreement, he is entitled to the prescribed royalties even though the patent upon which the license was granted has been held invalid; Difco contends, to the contrary, that the holding of invalidity excused the further payment of royalties. Thus the parties frame the conflict that has brought them to court, basing their antithetic contentions on a license agreement that is silent concerning patent invalidity.[1]

The license agreement resulted from the settlement of an infringement action brought by Scherr against Difco. The alleged infringement was the manufacture of a device for testing the sensitivity of microbial organisms to antibiotics and sulfonamides. Both parties manufacture such devices. Scherr's product is sold under the trademark "Multidisk"; Difco's device carries the trademark, "Unidisk". At the same time

---

1. The only provision in the agreement relevant to patent validity provides that Difco will not contest the validity of the patent during the life of the agreement.

Scherr sued Difco, he also brought an infringement action against National Bio-Test, Inc., the manufacturer of a sensitivity testing device trademarked "Desi-Disc". All three devices perform the same function in essentially the same manner; and since Difco was sharing the cost of National Bio-Test's defense and Scherr was being burdened with the cost of two trials in different districts, a settlement was apparently agreeable to both parties.

The product of the negotiations leading to the settlement was a document labeled "License Agreement" but also containing provisions settling the pending suit. By the terms of that document, Scherr dismissed the suit without prejudice to his "right to reinstate the action for cause"; Difco paid $3,000, "in satisfaction of past infringement"; and Scherr granted Difco a "non-exclusive license under United States Reissue Patent 24,557 to make, use, and sell the license product in the United States." Immediately following the provision granting the license were provisions establishing the manner in which royalties would be paid. In addition paragraphs 10 and 11 of the document provided for cancellation of the agreement and royalty-free production of certain products as follows:

"10. This agreement may be cancelled by Difco at any time after the first contract year upon six months' prior notice in writing upon the occurrence of either of the following events:

(1) If Difco completely ceases to manufacture, use, or sell the licensed product:

(2) If, after Difco furnishes Scherr proof of an infringing structure, Scherr fails either to abate the infringement or bring and diligently prosecute a suit against the infringer within six months of receipt of such proof.

"11. Difco shall have the right to make, use, and sell, royalty-free, any product which has been ruled not to infringe the Scherr Reissue Patent 24,-557 by any Court of competent jurisdiction and last resort or from which no timely appeal has been taken by Scherr."

The agreement was made on July 1, 1959, in Detroit, Michigan, and apparently some royalty payments have been made by Difco. On March 10, 1961, however, the United States District Court for the District of Nebraska held United States Reissue Patent 24,557 "void for want of invention", Scherr v. National Bio-Test, Inc., 197 F.Supp. 372, 378 (D.Neb.1961). That decision was affirmed by the Eighth Circuit, Scherr v. National Bio-Test, Inc., 301 F.2d 901 (8th Cir. 1962), and no review of that judgment was sought. On · August 1, 1962, in answer to an inquiry from Scherr concerning overdue royalty payments, Difco replied, "It was our understanding * * * that if you were unsuccessful in your suit against National Bio-Test, Inc., and your patent was ruled invalid, that we would be in the clear and under no further obligation to pay you royalties." Although Difco admits its obligation to pay all royalties accruing before the date of the decision of the Eighth Circuit, it denies any obligation to pay and has refused to pay any royalties accruing after that date.

Difco bases its refusal to pay primarily on the contention that under our decision in Drackett Chemical Co. v. Chamberlain Co., 63 F.2d 853 (6th Cir. 1933), the holding of invalidity by the Eighth Circuit was an eviction justifying termination of the license. In its argument on the defense based upon paragraph 11 of the agreement, Difco, in effect asks this Court to read into the agreement the doctrine of equivalents, which is used in patent litigation. But this is not a suit on the patent; it is a suit on the licensing contract, and the District Court properly disposed of the contract issue raised under paragraph 11. The Court, however, misconstrued our opinion in *Drackett* and as a result failed to make certain findings necessary to a final disposition of this case.

The District Court interpreted *Drackett* as applying only to exclusive licenses and indicated that the doctrine of eviction would not apply unless specific language in the license agreement provided for royalty-free rights after a final ruling of invalidity.[2] First, the *Drackett* case involved both an exclusive and a non-exclusive license,[3] and in its disposition of the case the Court squarely held that the holding of eviction applied equally to both:

> "It is suggested that·here the license contract was more than a mere license, in that it contained a provision that the Chamberlain Company would not advertise or solicit business from the grocery trade; and that the Drackett Chemical Company, having purchased immunity from suits for past or future infringement, by its agreement to pay royalties, should not now be permitted to deny such liability. The first of these suggestions is without weight. Licenses may be exclusive, partially exclusive, or nonexclusive. The principles which we have stated apply with equal force to all these types, * * *." 63 F.2d at 854–855.

Secondly, application of the doctrine of eviction presumes the absense of any specific language in the agreement. If the agreement provided that the licensee would no longer be bound after a judicial holding of invalidity of the patent, the agreement would terminate by its own terms on the happening of that event, and a resort to the doctrine of eviction would be unnecessary. Eviction occurs when there is a complete failure of consideration. It is based upon the principle that when the licensee has been completely deprived of his bargained-for exchange, it would be inequitable to compel him to continue performing under his agreement. See, 6 Williston, Contracts §§ 814–815 (3d ed. 1962); 6 Corbin, Contracts §§ 1255–1256 (1962). The decision in *Drackett* was based upon the premise that even with a non-exclusive license the destruction of the patent monopoly "by a decree of invalidity in a court of competent jurisdiction"[4] can result in "a complete failure of consideration—an eviction—which should justify a termination of the contract." 63 F.2d at 854.

Whether the holding of invalidity results in an eviction depends upon whether the protection given by the patent monopoly was the consideration for the payment of royalties. The difficulty we find with the District Court's opinion is that it contains no finding as to the

**2.** The District Court stated:

"We are persuaded that the doctrine of eviction may not here be honored as a defense in the light of the circumstances surrounding the execution of this particular License Agreement and in the light of the provisions contained in the agreement. We think that the background of this case, together with the language employed in the drafting of the License Agreement herein distinguishes it from *Drackett*. We do not think that *Drackett* was intended to nullify hornbook contract law.

\* \* \* \* \*

"Why was not language included here encompassing royalty-freedom resulting from a ruling of patent invalidity?" 270 F.Supp. 586, 589 (E.D.Mich.1967).

**3.** Drackett Chemical Company was granted an exclusive license "to sell to the grocery trade only," but "the earlier license agreement was modified so as to give the Drackett Chemical Company the non-exclusive right to sell to the hardware and drug trade." 63 F.2d 853.

**4.** Under the holding in *Drackett*, it is immaterial that the degree of invalidity was *rendered by a court in another Circuit*. We are aware that a holding of invalidity in one Circuit does not prevent a suit for infringement in another. Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L.Ed. 949 (1936). The *Drackett* rule does not impair that right of the patentee. Indeed, in this Circuit, upon a refusal to pay royalties, the licensor has an option to sue on the license or to treat the license as rescinded and sue for infringement. Universal Rim Co. v. General Motors Corporation, 31 F.2d 969, 970 (6th Cir. 1929). When the patent covered by the license has been held invalid, however, the *Drackett* rule *may* eliminate the option of suing on the license.

consideration for the royalty payments claimed in this suit.[5] Decisions in this Circuit and other Circuits indicate clearly that other consideration can justify a court in compelling the continued payment of royalties on a license even after a final holding of patent invalidity. For example, in Andrews v. Deering Milliken, Inc., 382 F.2d 799, 803 (6th Cir. 1967), the use of a trademark was also bargained for in the licensing agreement, and this Court held that the continued use of the valid trademark by the licensee was sufficient consideration for the royalty payments. Likewise, in Patterson-Ballagh Corporation v. Byron Jackson Co., 145 F.2d 786 (9th Cir. 1944), a business enterprise was purchased as an integral part of the licensing transaction, and that benefit was a sufficient consideration of the royalty payments after the patent upon which the license was based had been held invalid.

If the license agreement in this case were unambiguous, we would be in as good a position as the District Court to make a finding of consideration and finally determine this case. Letcher County, Ky. v. De Foe, 151 F.2d 987 (6th Cir. 1946). The actual agreed equivalent for the royalty payments in this case, however, is anything but clear. It is true that Difco obtained a termination of the pending suit and a somewhat ambiguous covenant not to sue from Scherr. But *Drackett* cautioned against such an interpretation of license agreements since " * * * [t]he saving of the expense of litigation was common to both [parties] * * * " 63 F.2d at 855. Besides, Difco paid $3000. for past infringement, and this amount could have been the agreed satisfaction for settlement of the suit. Also, the provisions of paragraph 10(2) indicates Difco's concern that the protection of the patent monopoly be maintained by Scherr. In view of these conflicts, a determination of the agreed exchange requires looking to the circumstances existing at the time the agreement was made, Pekar v. Local Union No. 181, International Union of United Brewery, etc., Workers, 311 F.2d 628 (6th Cir. 1962), and will involve resolution of questions of the credibility of witnesses. These are determinations best left to the District Court in the first instance.

If it were clear that *Drackett* was "controlling" authority, we could end this opinion here. The vagaries of our federal system raise another issue, however, that looms large in the proper resolution of this dispute. A suit on a patent license does not arise under the patent laws of the United States. Luckett v. Delpark, 270 U.S. 496, 502–503, 46 S.Ct. 397, 70 L.Ed 703 (1926). The jurisdiction of a federal court in such cases is generally based upon diversity of citizenship, as in this case;[6] and, therefore, we are bound by whatever limitations Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), might place upon our determination of the applicable law. State law has been held controlling on some issues of patent license interpretation. Andrews v. Deering Milliken, Inc., 382 F.2d 799, 803 (6th Cir. 1967); Whitfield & Sheshunoff, Inc. v. Fairchild E & A Corp., 269 F.2d 427 (2d Cir. 1959); Autographic Register Co. v. Philip Hano Co., 198 F.2d 208, 212 (1st Cir. 1952). Just as clearly the terms of a patent license can raise questions that are controlled by federal law.[7] Brulotte v. Thys Co., 379

---

5. The District Court made general findings that the circumstances surrounding the execution of the agreement and the background of the case would not allow application of the doctrine of eviction. But the Court made no finding of the specific consideration for the royalty payments, which is necessary to place us in a position to properly review the determination that eviction is not applicable.

Only with that finding of fact before us, can we determine whether a holding of patent invalidity would result in a complete failure of consideration.

6. Scherr is an Illinois resident and Difco is a Michigan corporation.

7. The use of a patent license to collect royalties on a worthless patent might be such a question. See Pope Mfg. Co. v.

U.S. 29, 32, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964).

The parties have neither briefed nor argued this issue. Since we are remanding the case for further proceedings, however, they will have an opportunity to argue the issue upon remand; so it would be inappropriate for us to decide the question without the benefit of counsel's argument. It will suffice if we merely indicate the possible conflict between the federal law and the applicable state law.

First, since the license was executed in Michigan and was to be performed in Michigan by a Michigan resident, the law of Michigan would control if state law is the proper standard. M. W. Zack Company v. R. D. Werner Co., 222 F.2d 634 (6th Cir. 1955) (applying Michigan law). In Thomson Spot Welder Co. v. Oldberg Mfg. Co., 256 Mich. 447, 240 N.W. 93 (1932) the Michigan Supreme Court indicated that under that State's law the doctrine of eviction did not apply to nonexclusive licenses.[8] If that is an unqualified holding, it would conflict with the *Drackett* rule as outlined above. Since *Drackett* was decided in the Swift v. Tyson [9] era it states the federal law and as indicated above we adhere to it as the law of this Circuit.

Upon remand the District Court may take arguments concerning the applicable law. If federal law applies, our previous discussion of *Drackett* should provide guidelines for the necessary findings. If state law applies, then appropriate findings and conclusions must be made based on that law.

The judgment of the District Court is vacated and the cause is remanded for further proceedings and findings consistent with this opinion.

Gormully, 144 U.S. 224, 12 S.Ct. 632, 36 L.Ed. 414 (1892):

"It is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly." 144 U.S. at 234, 12 S.Ct. at 636.

Also, authorities on patent licenses indicate that " * * * the Supreme Court is in favor of licensees who object to paying royalties on invalid patents." Ellis, Patent Licenses § 326 (Deller 3d ed. 1958). See also, 4 Walker, Patents § 410 (Deller 2d ed. 1965). But see, Autographic Register Co. v. Philip Hano Co., 198 F.2d 208, 213 (1st Cir. 1952), where the Court indicates that state law might control on the issue of eviction.

8. "At bar the contract was for use, not exclusive use, and was not restricted territorially. The decision of the District Court [of patent invalidity] ipso facto destroyed nothing of such right of use." 240 N.W. at 94. The First Circuit has also indicated disagreement with the *Drackett* rule. Automatic Radio Mfg. Co. v. Hazeltine Research, 176 F.2d 799 (1st Cir. 1949) aff'd on other grounds 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950). We adhere to the rule, however, because, as indicated, when properly applied it conforms to both general contract law and the strong policy against allowing a patentee to collect royalties on an invalid patent.

9. 41 U.S. (16 Pet) 1, 10 L.Ed. 865 (1842).