### The TROXEL MANUFACTURING COMPANY, Plaintiff,

v.

### SCHWINN BICYCLE COMPANY, Defendant.

### Civ. No. C–71–97.

United States District Court,
W. D. Tennessee, W. D.

Nov. 22, 1971.

John R. Walker, III, George E. Morrow, Martin, Tate, Morrow & Marston, C. Lee Welch, Memphis, Tenn., for plaintiff.

Walter P. Armstrong, Jr., Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., Malcolm McCaleb, Horton, Davis, McCaleb & Lucas, William E. Lucas, Chicago, Ill., for defendant.

## MEMORANDUM DECISION

BAILEY BROWN, Chief Judge.

In this diversity action, Troxel sues to recover royalty payments made by it to Schwinn on a patent that has been held to be invalid, and the matter is before us on Troxel's motion for summary judgment.

Troxel entered into an agreement with Schwinn on June 1, 1967 under which Schwinn licensed to Troxel the non-exclusive right to manufacture and sell bicycle seats covered by Schwinn's patent D–204,121 and under which Troxel was obligated to pay a royalty to Schwinn on each seat sold. The negotiation of this license agreement followed notice from Schwinn to Troxel that the latter was infringing the patent. Schwinn also released Troxel with respect to claimed infringement prior to the license agreement. Thereafter Troxel paid the royalties to Schwinn and, on occasion, at Troxel's request and pursuant to the license agreement, Schwinn took action against alleged infringers of the patent.

In the case of Schwinn Bicycle Co. v. Goodyear Tire and Rubber Co., 160 USPQ 587, the United States District Court for the Northern District of California on January 8, 1969 entered a judgment holding this patent invalid. Troxel then advised Schwinn that it was escrowing the royalties pending the determination of Schwinn's appeal. Schwinn thereupon sued Troxel in the United States District Court for the Northern District of Ohio on December 15, 1969 for past due royalties and to require Troxel to continue to make quarterly payment of royalties. This action was settled and dismissed by an agreement under which Troxel did pay such past due royalties and did continue making quarterly payments.

On December 22, 1970, the Court of Appeals for the Ninth Circuit affirmed the District Court's holding of invalidity (444 F.2d 295) and shortly thereafter Schwinn advised Troxel that it was accepting such determination as final, that it considered the license agreement as terminated and that no royalties would thereafter be due. Troxel paid no royalties for the last quarter of 1970.

In this action, Troxel sues for all of the royalties it has paid under the license agreement or, alternatively, all royalties it has paid with respect to seats sold after the entry of the judgment in the District Court for the Northern District of California on January 8, 1969. Schwinn has answered, denying that it should be required to pay back any of such royalties to Troxel, and has counterclaimed for the royalties on seats sold in the last quarter of 1970 prior to the judgment of affirmance in the Court of Appeals for the Ninth Circuit on December 22, 1970.

Troxel has filed a motion for summary judgment to which Schwinn has filed a response, both of which are supported by affidavits and briefs, and argument has been had on the motion.

Troxel is basing its claim for recovery of all royalties paid on the decision of the Supreme Court in Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L. Ed.2d 610 (1969). There the Supreme Court held, overruling its prior decisions to the contrary, that a licensee of a patent may, in a suit by the licensor to collect royalties, attack the validity of the patent and that, upon a determination that the patent is invalid, the licensee would be excused from paying any royalties accruing since the patent issued. Troxel, alternatively, with respect to royalties accruing after the judgment in the district court in Schwinn v. Goodyear on January 8, 1969, is relying on the doctrine of eviction as such doctrine was recognized in this Circuit even before Lear by the cases of Drackett Chemical Co. v. Chamberlain Co., 63 F.2d 853 (1933) and Scherr v. Difco Laboratories, Inc., 401 F.2d 443 (1968). Stated generally, this doctrine of eviction is that upon an adjudication in litigation in a court of competent jurisdiction, to which the licensee of a patent is not a party, that the licensed patent is invalid, the licensee may consider itself as having been "evicted" and thereafter may properly not pay royalties. Schwinn recognizes the applicability of this doctrine of eviction but contends that it did not become effective in the instant case until the affirmance by the Court of Appeals on December 22, 1970. Since, as will be seen, we take the view that a proper interpretation of Lear requires entry of summary judgment for Troxel as to all royalties paid to Schwinn, we need not deal further with this doctrine of eviction.

Before discussing the holding in Lear, we should point out that Schwinn has assumed in its dealing with Troxel, and indeed in presenting its argument that Lear does not require it to pay back these royalties to Troxel, that its legal position is the same as it would be if the final determination of invalidity in the California federal courts operated as res judicata as between it and Troxel. We mention this because the opinion in Scherr by our Court of Appeals (401 F. 2d at 446, note 4) reminds us of the principle that, while it may be the basis of an eviction, that adjudication in the

Ninth Circuit is not res judicata as between these parties, citing Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 645, 80 L. Ed. 949 (1936). In accordance with the assumption under which Schwinn has pitched its argument, we test Schwinn's position as if the adjudication in the Ninth Circuit were res judicata between these parties.

As stated, the decision in *Lear, supra,* is that a holder of a license for the use of a patent may attack its validity and that, upon the establishment of its invalidity, is excused from paying royalties. Schwinn contends that the decision does not cover the instant situation in which Troxel is seeking to recover royalties already paid. Troxel contends, on the contrary, that while the Supreme Court in *Lear* did not deal with the specific situation involved here, the doctrine of *Lear* is clearly applicable. None of the cases applying *Lear* have dealt with this specific situation. See, for example: Bendix Corp. v. Balax, Inc., 421 F.2d 809, 820 (7th Cir. 1970); Kraly v. National Distillers and Chemical Corp., 319 F. Supp. 1349, 1352 (N.D.Ill.1970); Bull v. Logetronics, Inc., 323 F.Supp. 115, 121 (E.D.Va.1971); Epstein v. Dennison Manufacturing Co., 314 F.Supp. 116, 124 (S.D.N.Y.1969). However, we believe that these cases do generally support our understanding of the effect of the *Lear* decision.

▮▮ The underlying reason for the *Lear* decision, as stated therein, is that the federal policy in favor of the public use of ideas that are in reality a part of the public domain must override the doctrine of state contract law that would by estoppel prevent a license holder from claiming invalidity and avoiding the payment of royalties. Considered in this light, we cannot see why the doctrine of *Lear* would not be equally applicable to the instant case in which Troxel is seeking to recover royalties paid for the use of an invalid patent. Schwinn argues that "to extend" *Lear* to allow the recovery of royalties already paid would place an unfair and too great a burden on licensors and would play havoc with the practice of licensing the use of patents. We cannot, however, see why a licensee who has paid royalties should be in a worse position than one who has not. Moreover, the licensor who has to pay back royalties at least has had the use of the licensee's money.[1]

There remains the problem as to whether this is a proper case for summary judgment. The facts as outlined at the beginning of this memorandum are not in dispute. We would agree that if the question presented is one as to whether there has been a failure of consideration, as Schwinn would have us view it, this would not be a case for summary judgment. For then, as Schwinn argues, we would have a mixed question of law and fact, which would first involve a determination as to the benefits Troxel actually received under the license during the period royalties were paid and then involve a determination as to whether any lack of benefits amounted to a failure of consideration. But here, as we construe *Lear,* because of the overriding federal policy, we are not concerned with the state contract law doctrine of failure of consideration.[2]

---

1. Troxel actually sues also for interest on the royalty payments from the date of payment. We do not rule on this claim for interest now, and we will hear from the parties further on this issue if necessary. At this point, it seems to us that it might well be equitable and not inconsistent with the involved federal policy, where a licensee is suing to recover royalties paid, to deny such interest except in such cases in which there is wrongdoing on the part of the licensor such as fraud in the procurement of the patent.

2. It should be noted that Schwinn's contention that the issue here is one of failure of consideration would be equally applicable, under state contract law, if Schwinn were suing to recover unpaid royalties and yet the square holding of *Lear* is that, in such a situation, Schwinn would be precluded by the federal policy from making any recovery irrespective of whether there was or was not a substantial failure of consideration.

**1272**

Thus we conclude that, applying *Lear* and under the undisputed facts, Troxel is entitled to summary judgment with respect to all royalties paid.

A judgment will be prepared for entry.