The **TROXEL MANUFACTURING COM-
PANY**, Plaintiff-Appellant and
Cross-Appellee,

v.

**SCHWINN BICYCLE COMPANY**, De-
fendant-Appellee and Cross-Appellant.

Nos. 73–1330, 73–1331.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 16, 1973.

Decided Dec. 19, 1973.

Certiorari Denied April 15, 1974.
See 94 S.Ct. 1942.

Affirmed in part; reversed and re-
manded in part.

William E. Lucas, Chicago, Ill., for defendant-appellee; Walter P. Armstrong, Jr., Memphis, Tenn., on brief; Malcolm McCaleb, Malcolm McCaleb, Jr., Chicago, Ill., of counsel.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

PHILLIPS, Chief Judge.

This is the second appeal in patent royalties litigation between the licensee of a patent (Troxel) and the owner of the patent (Schwinn) where the patent ultimately was ruled to be invalid. Reference is made to the earlier decision of this court reported at 465 F.2d 1253 (6th Cir. 1972) [hereinafter cited as *Troxel I*] for details of the background of the case.

Troxel was a licensee under the Schwinn patent. The patent was held invalid by a California District Court on January 3, 1969.[1] The United States Court of Appeals for the Ninth Circuit affirmed on December 22, 1970.[2]

In *Troxel I* this court held, among other things, that: (1) Troxel was not entitled to recover all the royalties it had paid to Schwinn from the inception of the license agreement; (2) the eviction of the patent occurred on December 22, 1970, the date of the Ninth Circuit decision of invalidity; and (3) Troxel was not entitled to recover royalties for any period prior to the eviction, i. e., December 22, 1970.

Also involved in this litigation is Schwinn's counterclaim for the final quarterly royalty payment asserted to be due under the license agreement for the last quarter of 1970.

The District Court[3] had ordered Schwinn to refund to Troxel all royalties collected under the license agreement. In *Troxel I* this court reversed and remanded with directions to dismiss the complaint and to make appropriate dis-

George E. Morrow, Memphis, Tenn., for plaintiff-appellant; John R. Walker, III, Memphis, Tenn., on brief.

1. 160 U.S.P.Q. 587.

2. Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co., 444 F.2d 295 (9th Cir. 1970).

3. 334 F.Supp. 1269.

position of Schwinn's counterclaim for royalties asserted to be due for the last quarter of 1970.

In the proceedings in the District Court on remand, Troxel moved to amend its pleadings to set forth an alternative theory of recovery, which it contends is consistent with the holding of this court in *Troxel I*. The District Court denied leave to amend. The District Court also denied Schwinn any recovery under its counterclaim for royalties for the last quarter of 1970. All other motions were denied and costs were taxed against Troxel.

Both Troxel and Schwinn have appealed to this court. Troxel appeals from the denial of its motion to amend its pleadings so as to aver an alternative theory of recovery. Schwinn cross-appeals from the denial of its counterclaim for royalties for the final quarter of 1970.

We affirm as to the denial of Troxel's motion to amend its pleadings. We reverse as to the action of the District Court on Schwinn's counterclaim and remand for entry of judgment in favor of Schwinn for royalties found to be owed by Troxel for the period prior to December 22, 1970.

*1) Motion to Amend*

Troxel strenuously contends that denial of its motion for leave to amend, especially in the absence of stated reasons, was an abuse of discretion. We disagree.

■ The grant or denial of a motion for leave to amend is within the sound discretion of the District Court and will be reversed only for an abuse of discretion. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330, 91 S. Ct. 795, 28 L.Ed.2d 77 (1971); Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Rule 15(a), Fed.R.Civ.P., mandates that leave to amend "shall be freely given when justice so requires."

In Foman v. Davis, *supra*, the Supreme Court set forth the guidelines governing motions to amend under Rule 15(a). They are as follows:

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." 371 U.S. at 182, 83 S.Ct. at 230.

These guidelines are founded on the hornbook proposition that piecemeal litigation should be discouraged, not only because it is antagonistic to the goals of public policy, but also because it is prejudicial to the rights of individual litigants.

With these considerations in mind, we come to the facts of this case. Troxel has moved to amend its pleadings to assert an alternative theory of recovery based on an August 31, 1967, modification of the license agreement. This modification has been of record in the case since September 20, 1971. The only excuse offered for this delayed presentation is that Troxel misconceived the law. Troxel now seeks to present a theory of law that is alleged to be consistent with

the prior law in this Circuit as reaffirmed by *Troxel I*.

■■ A misconception of the law is not an excuse for the late presentation of an alternative theory of recovery. No reason is shown why Troxel could not have presented its alternative theory initially. Drackett Chemical Co. v. Chamberlain Co., 63 F.2d 853, 858 (6th Cir. 1933), the case relied on, was and still is the law of this Circuit. That Troxel misconceived the effect of Lear v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), is of no consequence. A losing party can always argue in retrospect that he misconceived the law. Rule 15(a) mandates more of a showing than Troxel has presented here.

■ As pointed out by the Supreme Court in Zenith v. Hazeltine, *supra,* a trial court is required to take into account any prejudice that the party opposing the motion to amend would suffer. Here the prejudice to Schwinn is obvious. The case has been pending for more than two and one-half years, and Schwinn already has had to defend against one theory at both the district court and the appellate court levels. The District Court would have been justified in concluding that to put Schwinn through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial.

Troxel places primary reliance on Foman v. Davis, *supra.* In *Foman* the District Court had entered judgment and dismissed a complaint for failure to state a claim upon which relief could be granted. One day later, the plaintiff moved to vacate the judgment and amend the complaint to state an alternative theory of recovery. These motions were denied and the Court of Appeals affirmed. That decision was reversed by the Supreme Court.

The present case is readily distinguishable from *Foman.* In *Foman* the plaintiff had not attained a decision on the merits of his cause of action. The lawsuit was barely underway when it was terminated. Here Troxel proceeded under one theory through the Court of Appeals where it lost. Now it wants to repeat the whole cycle again. We are unwilling to reverse the decision of the District Court. The time has come to bring this extended litigation to an end.

Other authorities cited by Troxel do not force a contrary conclusion. In Western Urn Mfg. Co. v. American Pipe & Steel Corp., 113 U.S.App.D.C. 378, 308 F.2d 333 (1962), a motion to amend was allowed after a reversal and remand because of new facts. Here there are no new facts. Jones v. St. Paul Fire & Marine Ins. Co., 108 F.2d 123 (5th Cir. 1939), was an equity case where the court allowed the plaintiff leave to amend its complaint to assert an additional claim arising out of the same facts. Troxel already has asserted its claim and is merely seeking to justify it with a different legal theory.

We hold that it was not an abuse of discretion for the District Court to deny Troxel leave to amend its pleadings.

■■ In so holding, we note that the better practice is for a district court to state reasons for its denial of a motion to amend. However, as the court said in Foman v. Davis, *supra,* when reasons are readily apparent it is not per se an abuse of discretion to omit them. *See also* Komie v. Buehler, 449 F.2d 644, 648 (9th Cir. 1971).

■ In order to foreclose any doubts as to the equities of the matter, we hold that even if leave to amend had been allowed, Troxel could not have been successful on its alternative theory. Troxel's new theory is as follows:

"The theory of recovery proposed to be submitted by Troxel on remand is that the parties, by amendment to the patent license agreement between them, have stipulated that on termination of the agreement, their rights relative to the validity of the patent are to be the same as if there had been no license agreement. Absent a

license agreement, it is made clear by *Drackett* that there is a complete failure of consideration where the underlying patent is invalid. Such failure of consideration has long been recognized as a ground for recovery of moneys paid."

The amendment to the license agreement is as follows:

"Adverting to Section 2 of the license agreement dated June 1, 1967: On the basis of our consideration of the several specimens of your current saddles, we concur that the saddles now designated by you as Series 100 and Series 200 are subject to the royalty provisions of Section 2 of the license agreement and that Series 11 and Series 14 are not.

"It is further agreed that if the license agreement of June 1, 1967, is terminated for any reason, both Troxel and Schwinn, insofar as the question of the validity and scope of said patent is concerned, shall be deemed to be in the same positions after such termination has become effective as they would have been if the license agreement had never been entered into."

In an effort to rely on the rationale of Drackett Chemical Co. v. Chamberlain Co., *supra,* Troxel contends that this modification makes the contract void *ab initio* and entitles it to a complete refund of all royalties paid. This interpretation would sidestep completely our holding in *Drackett,* as reaffirmed in *Troxel I,* by eliminating the effect of any benefits Troxel may have received as consideration for the royalty payments. We hold this to be an untenable position.

The contract modification was pre-*Lear* and provided that the parties shall be deemed to be in the same position *after such termination has become effective* as they would have been if the license agreement had never been entered

into. This amendment does not void the contract *ab initio,* but rather gives Troxel the right to contest the validity and scope of the patent *after* termination of the license agreement.[4]

Aside from, and in addition to, the contract argument, Troxel contends that it is entitled to recover solely under the rationale of *Drackett.* This court noted in *Drackett* that an eviction will terminate a patent license agreement. The court stated:

"Prior to such eviction, the mere invalidity of the patent is properly held not to be a sufficient defense, because the licensee may still continue to enjoy all the benefits of a valid patent. It may be respected, and the licensee would then have just what he bargained for." 63 F.2d at 854.

\* \* \* \* \* \*

"Licenses may be exclusive, partially exclusive, or nonexclusive. The principles which we have stated apply with equal force to all these types. . . ." *Id.* at 855.

In *Troxel I* we held that, absent a bad faith appeal, the eviction occurred on December 22, 1970, the date of the Ninth Circuit's holding of invalidity. 465 F.2d at 1255. There has been no showing that Schwinn prosecuted its appeal in that case in bad faith.

Troxel's position is that it received no benefits from the license agreement. In *Troxel I* we stated:

"During all this time it had the benefit of freedom from suit for infringement and agreement of Schwinn to attempt to halt unlicensed infringers. It also enjoyed freedom from liability for past infringement." 465 F. 2d at 1260.

Troxel disagrees by contending that these benefits can not provide support for the royalties, relying on Lear v. Adkins, *supra,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). Again we reject this argument.

4. The contract was terminated effective December 22, 1970, the date of the Ninth Circuit's holding of invalidity, and we are concerned only with royalties for the products sold before then.

In *Lear* the Supreme Court weighed equities when it discussed contract consideration. The precise issue was licensee estoppel, and the Court was primarily concerned with the existence of unchallenged patents and their effect on competition. This is an entirely different situation from the case at ·bar. Here the patent already has been challenged and invalidated. Troxel seeks to recover all royalties that it previously had paid, even though it received numerous benefits. We reaffirm our prior holding that the equities weigh heavily against Troxel. 465 F.2d at 1257–1260. Troxel is not entitled to a refund of any royalties paid prior to the eviction of the patent on December 22, 1970.[5]

### 2) The Counterclaim

In *Troxel I* we remanded with directions to dismiss Troxel's complaint and make appropriate disposition of Schwinn's counterclaim. We stated:

"The sole remaining issue is the disposition of Schwinn's counterclaim for royalties due for goods sold during the last quarter of 1970. *Lear* makes it clear that Troxel may defend against this counterclaim on the ground that the Brilando patent is invalid. Further, the Ninth Circuit ruling of invalidity is 'available [as] an estoppel defense that can be pleaded affirmatively and determined on a pretrial motion for judgment on the pleadings or summary judgment.' Blonder-Tongue [Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation], *supra,* 402 U.S. [313] at 348, 91 S.Ct. [1434] at 1452 [28 L. Ed.2d 788]." *Id.* at 1260.

This counterclaim was to be disposed of in light of the following preceding statement:

"A licensee may at any time cease royalty payments, secure in the knowledge that the invalidity of the patent may be urged when the licensor sues for unpaid royalties. *Lear, supra.* If the patent is declared invalid through the efforts and expenditures of another, no further royalties are due under the license agreement. Drackett Chem. Co. v. Chamberlain Co., *supra,* 63 F.2d 853. Further, if the evicted licensee is sued as an infringer, the prior adjudication of invalidity enables the licensee to secure pretrial judgment in his favor. *Blonder-Tongue, supra,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788. To permit a licensee in addition to recoup royalties paid is to extend *Lear* far beyond its rationale. Congress has not seen fit to create an implied warranty of validity in license agreements. We decline to do so by judicial action." *Id.*

·Troxel did not cease royalty payments prior to the Ninth Circuit's holding of invalidity. *Drackett* makes it clear that Troxel cannot avoid liability for royalties prior to this date. The court in *Drackett* stated:

"It is only· when, by judicial decree or otherwise, it is published to the world that the monopoly is destroyed, that the licensee can claim a corresponding release from his obligation to pay royalties." 63 F.2d at 854.

It was our intention in *Troxel I* that the District Court on remand would compute royalties due for products sold prior to the eviction and enter judgment for this amount against Troxel.

The District Court's denial of relief to Schwinn on its counterclaim and granting of Troxel's motion for summary judgment on the counterclaim is reversed.

The District Court is directed to compute the amount of royalties due for the last quarter of 1970 and enter judgment against Troxel for that amount. These royalties are to be computed for the period embracing the fourth quarter of 1970 and ending on December 22, 1970, the date of eviction of the patent.

5. Reference is made to Ransburg Electro-Coating Corporation v. Spiller and Spiller, Inc., 489 F.2d 974 (7th Cir. 1973), in which the Court of Appeals of the Seventh Circuit adopted the rationale of *Troxel I.*

We hold that Schwinn is not entitled to recover double costs, damages or attorney's fees. The costs on these cross-appeals will be taxed against Troxel.

The case is remanded for further proceedings not inconsistent with this opinion.